Murray T. Feiden, J.
Petitioners in this article 78 proceeding, husband and wife, are tenants in a multiple dwelling located at 1700 Bedford Avenue, Brooklyn, New York, known as Ebbets Field Apartments, owned by the Field Housing Co., Inc., a limited-profit housing company organized and existing under the Private Housing Finance Law of the State of New York, herein referred to as the owner.
Petitioners, by this article 78 proceeding, seek to annul the determination of the respondents (the Commissioner of the New *989 York State Division of Housing and Community Renewal and Commissioner of the New York State Housing Finance Agency) that they are ineligible for continued occupancy of their apartment and ask that the matter be remitted for a further determination as to their eligibility. Petitioners assert that they have been denied “ due process ” claiming that they have a right to a hearing to ascertain the reasons for their ineligibility and to have an opportunity to appeal any adverse determination.
The petitioners derived their occupancy under a rental agreement made with the New York State Housing Finance Agency whose power and authority will be hereinafter discussed.
The sole issue herein is whether the respondents are required to afford petitioners a hearing before serving them with a written notice to vacate their apartment. Petitioners rely on the cases of Thorpe v. Housing Auth. of City of Durham (267 N. C. 431, vacated and remanded 386 U. S. 670; 271 N. C. 468, revd. and remanded 393 U. S. 268) and Matter of Vinson v. Greenburgh Housing Auth. (29 A D 2d 338). An examination of these cases and the other authorities cited by petitioners discloses that they all refer to “ public housing ’’which was erected with public funds. The respondents claim that these authorities are inapposite since the property in question is not public housing and was not built with public funds but was conceived, organized and is existing under the provisions of the New York State Private Housing Finance Law.
This of necessity leads us to an examination of the purposes and intent of the law for a determination as to whether the theory expressed in Thorpe v. Housing Auth. (supra) and Matter of Vinson v. Greenburgh Housing Auth. (supra) is applicable here.
The Legislature in enacting the Private Housing Law stated (§ 41): “ In order to encourage the investment of private capital and provide such dwelling accommodations, provision should be made for mortgage loans, at low interest rates, to housing companies which, subject to state regulations as to rents, profits, dividends and disposition of their property, supply multiple dwelling accommodations, and other facilities incidental or appurtenant thereto to such families and persons. For that purpose there should be created a corporate governmental agency of the state to be known as 1 New York state housing finance agency ’, which, through the issuance of its bonds, notes and other obligations to the private investing public, may attract a broad base of investment by the greatest number of the general public and obtain the funds necessary to make such mortgage loans. Thus, private capital will be encouraged to enter this field of investment and will help meet the housing needs of *990 families and persons of low income * * * ” (Italics supplied.)
The New York State Housing Finance Agency, herein referred to as the Agency, was thus created (§43) to borrow money and issue its negotiable notes, bonds and other obligations and to provide for the rights of the holders thereof (§ 47, subd. 7). Subdivision 8 of section 46 provides that ‘ ‘ the state shall not be liable on notes and bonds of the agency and such notes and bonds shall not be a debt of the state, and such notes and bonds shall contain on the face thereof a statement to such effect.”
Section 44-a provides that the Agency, subject to the approval of the Commissioner and to the provision of any contract with note holders and bond holders, shall have the power to lease not more than 20% of the apartments from an owner, a limited-profit housing company created by article 2 of said law, and to sublet them to persons whose annual income is less than five times the rental fixed therefor, at a rental equal to 20% of the probable aggregate annual income of the occupant. While the New York State Housing Finance Agency leases the units from the limited-profit housing companies at one rental and sublets them to persons of low income at a lower rental, thus providing them with a subsidy, nevertheless, this subsidy does not change the underlying motive and purpose of the law which was to encourage the investment of private capital and provide such dwelling accommodations for persons and families of low income.
The Commissioner of Housing and Community Renewal acts as agent of the Housing Finance Agency in the leasing from the owner and subleasing them to persons of low income and helps in the management of the project as it affects the units leased to the Agency. The primary leases from the owners and the subleases to the occupants are for a term of three years, without renewal clauses, and provide that no person may retain possession without a lease.
The manager of the owner requested the Agency not to renew petitioners’ lease upon its expiration, which request was concurred in by the Supervisor of the Low Rent Assistance Unit of the Division of Housing and Community Renewal. Petitioners’ sublease having terminated on June 30, 1969, a notice dated July 31, 1969 was served upon them that they had been found ineligible for occupancy under the program and that their tenancy was terminated as of August 31, 1969. A summary proceeding was then instituted on or about November 6, 1969, which proceeding apparently is still pending.
The authorities cited by petitioners involve public housing and are inapplicable to the case at bar. The court finds that the *991 owner, Field Housing Co. Inc., is not an instrument of the government but rather one engaged in private housing subject to limited State control. The State has not here embarked into an area of housing as a function of government. In the Vinson case (supra, p. 345) Mr. Justice Beldock in his dissenting opinion clearly expressed the thinking of the court, relative to both private and public housing by stating: u The majority of this court concedes that if the appellant were a private landlord there would be no question that the lease between the parties could be terminated, without reason, by virtue of its provisions allowing termination by the giving of the required notice by either party.’5
The Thorpe case pertains to public housing created by Federal funds, whereas in the case at bar the project was created by private investment in a limited-profit housing company.
Local laws have been examined to determine their relevancy. The Bent, Eviction and Rehabilitation Regulations (§2, subd. f, par. [6]) specifically exempt housing accommodations in buildings in which rentals are fixed or are subject to the supervision of the State Commissioner of Housing and Community Renewal; and the Rent Stabilization Law of 1969 (Administrative Code of City of N. Y., § YY51-3.0, subd. a, par. [2]) specifically exempts dwelling units subject to rent regulations under the Private Housing Finance Law or any other State law.
This court finds that the intent of the Legislature in attempting to encourage private free enterprise to invest under the Private Housing Finance Law might well be nullified if it were required to hold a hearing for every tenant whose lease was not to be renewed. Clearly the requirement that the Supervisor of the Low Rent Assistance Unit of the Division of Housing and Community Renewal concur in any decision taken by the owner with respect to a tenant’s occupancy is a sufficient safeguard of the tenants ’ rights under their lease.
Furthermore, consideration must be given to the rights and obligations of those tenants in the project who occupy their apartments by reason of direct leases with the landlord and not under subleases with the Agency. Are we to have one set of rules for them and another for the sublessees ? Clearly this was not the intent of the Legislature.
Accordingly, the petition is dismissed.
On the pleadings before the court it appears that petitioners have not replied to the counterclaim interposed by the respondents as required by CPLR 7804 (subd. [d]) and are in default. The amount requested by the respondents for use and occupancy *992 is greater than that provided in the major lease from the owner or the sublease to the tenants. The counterclaim is accordingly severed and set down for a hearing for the assessment of damages, upon the respondents’ filing the required note of issue and taking any other necessary procedural steps.