## DELTA COUNTY *v.* CITY OF GLADSTONE.

1. Municipal Corporations—Ordinances—Statutes.

   A municipal corporation has power to enact ordinances dealing with offenses already prohibited by State statute.

2. Constitutional Law—Statutes.

   "Laws," as that term is used in the Constitution, emanate from the sovereignty and not from its creatures, hence refer solely to legislative enactments.

3. Same—Allocation of Fines—Municipal Corporations—Violation of Ordinances.

   Provision of Constitution allocating fines assessed and collected in the several counties, cities and townships for any breach of the penal laws to establishment of libraries does not embrace fines collected for violations of municipal ordinances where the prosecutions were instituted on complaints in the

name of a city, a creature of the sovereignty, and referred specifically to particular ordinances claimed to have been violated notwithstanding penalties were also provided for the same offenses by State statute (Const. 1908, art. 11, § 14).

4. Municipal Corporations—Criminal Law.

Prosecutions for violations of city ordinances are not criminal cases within the meaning of the term as used in the general laws of the State.

5. Costs—Counties—Municipal Corporations—Public Question —Allocation of Fines.

No costs are allowed in action by county against a city to recover moneys paid in fines for violation of city ordinances, a public question being involved (Const. 1908, art. 11, § 14).

Appeal from Delta; Bell (Frank A.), J. Submitted January 13, 1943. (Docket No. 48, Calendar No. 42,227.) Decided April 6, 1943.

Assumpsit by the County of Delta and Ralph H. Olsen, Treasurer of Delta County, against the City of Gladstone for fines collected by defendant for violation of city ordinances. Judgment for plaintiffs. Defendant appeals. Reversed and remanded.

*J. Clyde McGonagle* (*William J. Miller,* of counsel), for plaintiffs.

*Glenn W. Jackson,* for defendant.

*Clarence E. Page, Ganson Taggart, William A. Evart, William M. Garland, Charles H. Menmuir,* and *Clay Campbell,* for cities of Detroit, Grand Rapids, Pontiac, Owosso, Traverse City, and Lansing, *amici curiae.*

Chandler, J. The Constitution (Const. 1908, art. 11, § 14) provides:

"The legislature shall provide by law for the establishment of at least one library in each town-

ship and city; and all fines assessed and collected in the several counties, cities and townships for any breach of the penal laws shall be exclusively applied to the support of such libraries."

Pursuant to this provision, the legislature enacted 2 Comp. Laws 1929, § 7661, as amended by Act No. 271, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 7661, Stat. Ann. 1942 Cum. Supp. § 15.738), providing for the distribution by the county treasurers of the proceeds of fines for breach of the penal laws of the State.

Plaintiff, county of Delta, instituted this proceeding against the city of Gladstone, a city organized under the home rule act (Act No. 279, Pub. Acts 1909, as amended [1 Comp. Laws 1929, § 2228 *et seq.*, as amended (Stat. Ann. § 5.2071 *et seq.*, as amended)]), to recover certain fines received by said city as a result of prosecutions for violations of city ordinances. The various offenses listed for which the fines were paid were "drunk and disorderly," "reckless driving," "disorderly," and "drunk." The ordinances authorized generally the imposition of a fine or jail sentence and dealt with offenses also punishable under State statutes. The prosecutions were instituted on complaints in the name of the city of Gladstone and said complaints referred specifically to the particular ordinances which were claimed to have been violated.

The trial court entered a judgment for plaintiff and defendant appeals, claiming that the fines so collected did not result from prosecutions for breach of any of the "penal laws" of the State within the purport of the constitutional and legislative provisions heretofore cited, and that the proceeds of such fines belong to the city.

Discussion of the historical background of the constitutional and statutory provisions in question

would seem to be unnecessary as previous holdings of this court are controlling of the issue presented.

Plaintiffs' argument proceeds on the theory that inasmuch as the State statutes prohibit and impose penalties for the same offenses covered by the ordinances of the city, the prosecutions must be deemed to have been for violations of "penal laws." No question can be raised as to the power of the municipality to enact ordinances dealing with offenses already prohibited by State statute. *Builders Ass'n* v. *City of Detroit,* 295 Mich. 272.

Although our early decisions held that prosecutions for violations of ordinances were not criminal in nature (see *People* v. *Smith,* 146 Mich. 193, and cases cited), it has been later recognized that such proceedings are in a sense criminal. *People* v. *Goldman,* 221 Mich. 646; *City of Detroit* v. *Wayne Circuit Judge,* 233 Mich. 356; *People* v. *Riksen,* 284 Mich. 284 (116 A. L. R. 116). However, we have at no time completely abrogated the distinction existing between the two types of proceedings even though the particular ordinance under which the prosecution was instituted pertained to conduct also prohibited by statute.

In our opinion, the issue presented by this appeal was settled by *Fennell* v. *Common Council of Bay City,* 36 Mich. 186, wherein we held that fines collected for violations of a city ordinance were not received under the "penal laws" of the State within the meaning of that phrase as used in the constitutional provision then in effect. The controlling language used in that case is as follows (p. 190):

"We have heretofore on more than one occasion intimated that the penal laws referred to in the State Constitution were the laws of the State. The term *law,* as defined by the elementary writers, emanates from the sovereignty and not from its crea-

tures. The legislative power of the State is vested in the State legislature, and their enactments are the only instruments that can in any proper sense be called laws.''

See, also, *People* v. *Crucible Steel Co.,* 151 Mich. 618.

.The prosecutions under which the fines in question were collected were under ordinances enacted by the city, a creature of the sovereignty, and were not the direct result of the exercise of sovereign or State legislative power. The distinction is at once apparent.

The constitutional provision involved when the *Fennell Case* was decided (Const. 1850, art. 13, § 12) was substantially the same as that now in force, except that the former did not refer to fines collected in cities, and contained a proviso whereby such fines might be appropriated for purposes other than library purposes. In adopting a clause containing substantially the same provisions, it is of importance to note, and we may be guided thereby, the construction placed thereon by the framers of the present enactment. It is apparent from the following appearing in 1 Debates of the Constitutional Convention of 1907–1908, pp. 175, 176, that they did not intend that the phrase ''penal laws'' should include municipal ordinances:

''*Mr. Flannigan:* Mr. Chairman, I move to amend by the insertion in line seven after the word 'laws' the words 'or violations of municipal ordinances.'

''The question being upon the amendment offered by Mr. Flannigan. * * *

''*Mr. Flannigan:* Mr. Chairman, the purpose of the amendment is to drift into the library fund fines for the violations of municipal ordinances, in addition to such fines as may be collected in the same city by the proper courts for violations of the penal laws. * * *

*"Mr. Cranor:* Mr. Chairman, there is one thing I want to ask, and that is whether or not this distribution that was spoken of over there a little bit ago is going to be carried on in the same manner as the distribution of the fines that are paid to the county treasurer? If so, I am not in favor of this amendment. The fines collected for violations of the city ordinances by the city government, the expenses of the administration of which is paid by the citizens of the city by a separate tax ought not to be distributed as are those paid to the county treasurer.

*"Mr. Sawyer:* I would like to have that question answered. I was about to make the same suggestion when the gentleman from Mason (Mr. Cranor) rose. It seems to me to be entirely unjust that the fines from city ordinances, the expense of collecting which is entirely borne by the city, should be distributed pro rata throughout the county, and I do not think that that was in the mind of the mover of this amendment. It seems to me that that matter ought to be provided for in some manner before this passes.

"The question being taken upon the motion of Mr. Flannigan to insert the words 'or municipal ordinances' the amendment was not agreed to—yeas 29, nays 31."

And it is worthy of note that the foregoing proceedings in the constitutional convention occurred only a few months after our decision in *People* v. *Smith, supra,* wherein it was again stated: "Prosecutions for violations of city ordinances are not criminal cases within the meaning of the term as used in the general laws of the State," and numerous Michigan decisions are cited.

*Wayne County* v. *City of Detroit,* 17 Mich. 390, and *People* v. *Controller of Detroit,* 18 Mich. 445, relied upon by the trial court, are distinguishable in that in those cases the fines collected were collected under a provision of the city charter which

was an enactment of the legislature having the force of law, and not pursuant to the provisions of an ordinance.

It was admitted by defendant that fines to the extent of $109 set forth in plaintiffs' bill of particulars were collected in prosecutions under State statutes, and the proceedings in connection therewith instituted in the name of the State of Michigan. It was further admitted that plaintiffs were entitled to recover this amount.

The judgment is vacated and the case remanded for entry of judgment for plaintiffs in the amount of $109. No costs will be allowed as a public question is involved.

BOYLES, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.