HAYES HIGHTOWER, INFANT AND MINOR, BY HIS NEXT FRIEND, LUTHER HIGHTOWER, v. MACK B. THOMPSON, BURLINGTON, N. C.

(Filed 1 March, 1950.)

**1. Arrest and Bail § 8—**

The liability on an appearance bond upon its forfeiture by nonappearance of the accused is the penal sum of the bond and not the fine or costs, the costs being deductible from the amount of the bond solely to ascertain the clear proceeds for the use of the public school fund.

**2. Extortion § 2—**

The evidence tended to show that plaintiff had been found guilty *in absentia* upon a plea entered by plaintiff's brother-in-law, that the justice of the peace agreed that the fine might be paid the following week upon the agreement of plaintiff's bondsman to "stay on his bond," that payment not having been made, the justice of the peace notified the bondsman and issued him a capias upon request, and that the bondsman under threat of arrest extracted a sum several times the amount of the fine from plaintiff and the next day paid the amount of the fine into court. *Held:* Nonsuit in plaintiff's action for extortion was erroneously granted.

PLAINTIFF's appeal from *Clement, J.,* November Term, 1949, CASWELL Superior Court.

The plaintiff, a minor, 17 years of age, brings this action by his next friend, (Luther Hightower, his father), to recover from the defendant money which he claims was wrongfully extorted from him by threats and misrepresentations of the defendant, Mack B. Thompson, in the sum of $52.00, and for punitive damages in the sum of $5,000. The complaint setting up the cause of action was duly filed and material portions thereof answered. When the case came on for a hearing the defendant demurred to the complaint and moved to dismiss the action on the ground that the complaint did not set up any cause of action. The demurrer was overruled and the court proceeded with the hearing.

It appears from the evidence that on September 11 the defendant Thompson approached the plaintiff Hayes Hightower while the latter was in jail in Alamance County under a charge of public drunkenness and offered to sign for him an appearance bond, in the penal sum of $25.00, for his appearance before C. C. Bayliff, J.P., on September 17,

at 7:30 p.m. He did not appear at that time, but got his brother-in-law, Walter Ellison, to go and "plead him guilty," and settle the matter. Bayliff accepted the plea, found Hightower guilty, *in absentia,* and after consulting with the bondsman, Thompson, who agreed to "stay on his bond," agreed that "Hightower might send the money the following week," not naming any certain day.

The money not coming in during the week allowed, Thompson was notified of the default and on October 7 applied for and received a capias for the arrest of the plaintiff and proceeded to his home at Yanceyville in Caswell County, and there saw the defendant's mother, whom he told that the boy was in trouble and he had come for the boy or the money. She had no money. Thompson and Charlie Kimber went to the school-house in Yanceyville where the plaintiff was in school, and Thompson called for Hightower.

After a talk with Prof. Dillard, the Superintendent, Thompson returned to his car and was followed shortly by Hayes Hightower. What occurred is best described in the testimony of the plaintiff:

> "At the school grounds I saw him down at the road in an automobile. I went out to see him. He told me he had come to see about the trouble I got in, and I told him I had paid for it, and he said you haven't paid either, and I told him to come to the house with me and then we went over to the barn and my brother give me $50.00 and I paid him $52.00. He said I owed him $60.00 and finally come down to $55.00 and then at last to $52.00, and that is what I paid him. I was afraid he would take me to jail. He said if I didn't pay him he would get the sheriff and arrest me. I live about 15 miles from Yanceyville. I can't recollect what statements he made to my brother and mother. When I gave him the $52.00 he wrote something on a paper and gave me this paper."

The plaintiff said he did not owe Thompson anything or anything on fine and cost when the demand was made on him and so told Thompson, but paid him the $52.00 in fear of arrest. Upon this payment Thompson marked on the back of the paper (which he had held in his hand at the colloquy at the schoolhouse) "Paid in full. Mack"; and delivered it to Hightower. The paper turned out to be the capias above mentioned.

On cross-examination the witness stated that, "Thompson told me that he had been to court that day and nobody came in or paid him anything. Then he told me that he had this paper in his hand and I would have to be brought back unless I paid off the fine and costs. He did not tell me the magistrate said if I wanted to pay off the fine and costs it would be $13.35. I did not read it. I am in the 11th grade. I didn't read the papers; he didn't give me time . . . He did not tell me he had scoured

all over the country for me trying to find me for two days right then and there . . . I left Mack and went off in a car and got some money and came back and paid Mack $52.00. He told me what these different things were for and I told him that was all right and I was glad to get it settled."

Thompson left with the sheriff on the night of the 7th $13.95 to be paid on the fine and costs.

On the following morning the brother-in-law of plaintiff appeared at the office of the Justice of the Peace, insisting that he receive the fine and costs, which had been stated to be $13.51. The magistrate testified that it had already been paid into the sheriff or clerk by Thompson, "and I got ahold of him and he wouldn't accept it and I tried to pay Mack back and he wouldn't accept it." That he had delivered capias exhibited to him, along with two more to Mack Thompson, to be turned over to the Sheriff of Alamance County; that the capias had never been returned.

The capias to Alamance County was introduced by the plaintiff, on the back of which was written, "Paid in full. Mack."

Bayliff testified that he had never issued a citation against the bondsman Mack Thompson. He further stated, "The amount of the bond was $25.00. If I had collected the bond it would have been $25.00 and no costs."

The plaintiff introduced witnesses who testified that they saw Hightower pay to the defendant Thompson $7.50 for going on his bond on the Sunday morning of his discharge.

This is substantially the evidence in the case. At the conclusion of the plaintiff's evidence, the defendant, offering none, demurred to plaintiff's evidence and moved for judgment of nonsuit, which was allowed. Plaintiff appealed.

*E. F. Upchurch and D. E. Scarborough for plaintiff, appellant.*
*Long & Ross for defendant, appellee.*

SEAWELL, J. The bail bond given by Thompson for the release of Hightower from custody pending the hearing appears from the evidence to have been an "appearance bond," presumably in the usual form, in the penal sum of $25.00. Upon its forfeiture by the nonappearance of the accused the bondsman thereby became obligated to the court in the sum of $25.00—the penal sum of the bond, no more, no less; and not for the fine or costs. 8 C.J. 5, "Bail," sec. 84; *Current v. Church,* 207 N.C. 658, 178 S.E. 72. The clear proceeds of this forfeiture are for the use of the public school fund; N. C. Constitution, Article IX, Sec. 5; and the "clear proceeds" have been judicially defined as the amount of the forfeit less the cost of collection, meaning thereby the citations and

process against the bondsman usual in the practice. *Board of Education v. High Point,* 213 N.C. 636, 197 S.E. 191; *S. v. Maultsby,* 139 N.C. 583, 51 S.E. 956.

In the case at bar there was no forfeiture declared by the court and no citation to the bondsman, Thompson, of any sort.

It is true that a bondsman may arrest the principal without process when necessary to have him in court in relief of his own liability while the appearance is still required; G.S. 1-435. That, however, is foreign to the case at bar. The procurement of a capias against the plaintiff when he had the personal right of arrest without process in exoneration of his liability on the bond, foreshadows the use to which the evidence tends to show the defendant put it. The evidence is not without its inferences that the defendant caused the plaintiff to pay him $52.00 under fear of arrest and imprisonment; an amount much in excess of the fine and costs, and seemingly representing the trouble and expense to which the bondsman was put in trying to find him,—a risk which he undertook when he went on the bond and not collectible in that way. It should have been submitted to the jury.

The judgment of nonsuit is
Reversed.