HOUSING AUTHORITY OF THE CITY OF DURHAM v. JOYCE C. THORPE.

(Filed 11 October, 1967.)

1. **Statutes § 8; Constitutional Law § 25—**

Ordinarily, statutes in this State are presumed to act prospectively only, and a statute which affects a constitutional right may not be construed to have a retrospective effect.

2. **Landlord and Tenant § 10—**

A directive of the Department of Housing and Urban Development relative to the termination of leases in an urban development built with the assistance of Federal funds can have no relevancy to the termination of a lease some 17 months prior to the issuance of the directive, since such directive insofar as it affects contractual constitutional rights cannot be given retrospective effect.

3. **Same—**

Where a tenant testifies that she was given notice to vacate the day after she was elected president of an organization for tenants living in the project and contends that termination of her lease was because of such activity, but in a hearing there is testimony of the manager to the effect that the lease was terminated at the expiration of the term in accordance with its provisions and that the tenant's activities in the club played no part in the decision of lessor not to renew the lease, the evidence discloses mere coincidence but no showing of causal relation between the termination of the lease and the tenant's activities, and the court's findings to this effect support its order that the tenant surrender the premises.

APPEAL by defendant from *Bickett, J.,* October 1965 Civil Session, DURHAM Superior Court.

*M. C. Burt, Jr., and Jack Greenberg, James M. Nabrit, III, Michael Meltsner, Charles H. Jones, Jr., and Charles Stephen Ralston for defendant appellant.*

*Daniel K. Edwards for plaintiff appellee.*

HIGGINS, J. The plaintiff, a North Carolina corporation with federal assistance, built, owned, maintained, and managed the Mc-Dougald Terrace, a low-rent public housing project in the City of

Durham. On November 11, 1964 the Housing Authority, as owner, and Joyce C. Thorpe, as tenant, entered in a written agreement whereby the Authority leased to Mrs. Thorpe Apartment No. 38-G for a term of 30 days. The agreement provided: ". . . This lease may be terminated by the Tenant by giving to Management notice in writing of such termination *15* days prior to the last day of the term. The Management may terminate this lease by giving to the Tenant notice in writing of such termination fifteen (15) days prior to the last day of the term. . . ." Each party had equal right to terminate the lease. The limitations as to time or terms were lawful. *Chicago Housing Authority v. Blackman,* 4 Ill. 2d 319, 122 N.E. 2d 522; *Housing Authority of Los Angeles v. Cordova,* 130 Cal. App. 2d Supp. 883, 279 P. 2d 215, cert. denied, 350 U.S. 969; *Lawson v. Housing Authority of Milwaukee,* 270 Wis. 269, 70 N.W. 2d 605.

On August 11, 1965 the Housing Authority gave the tenant notice it was terminating the lease and gave direction that she vacate the apartment. On August 20, and again on September 1, the tenant requested a hearing. The Manager of the Authority conferred with tenant's counsel but did not give the tenant a hearing nor disclose any reason for refusing to extend the lease.

After the term expired and the tenant refused to vacate, the Authority instituted ejectment proceedings. The tenant testified that the day before the notice to terminate was served, she was elected President of the Parents' Club, an organization for tenants living in the project. She testified, in her opinion, she was being ejected because of her club activities. In support of her belief, she offered nothing except the timing between her election and the service of the notice. She neither offered evidence of the purposes of the club nor any reason why the Authority should object to it. The Manager testified at the hearing before the Justice, and, by affidavit, before the Superior Court that the tenant's activities in connection with the club played no part whatever in the decision of the Authority not to renew the lease.

After hearing, the Justice of the Peace entered judgment of eviction. Mrs. Thorpe appealed to the Superior Court. The parties waived a jury trial and consented that Judge Bickett hear the evidence, find the facts, and render judgment without the intervention of a jury. Judge Bickett found the Authority had terminated the lease in the manner provided by the agreement of the parties and that the tenant's activities in the Parents' Club played no part in the decision of the Authority not to renew the lease. The timing of the club election and the service of the ejection notice might arouse suspicion if the activities of the club were shown to have been hostile to the Authority. Without such showing and in the face

of positive testimony of the Manager to the contrary, the charge is based altogether on coincidence. The timing may arouse suspicion, but to the judicial mind, suspicion is never a proper substitute for evidence. From Judge Bickett's findings against her, and his order that she surrender the premises, Mrs. Thorpe appealed. Pending our consideration of the appeal, we ordered a stay of execution.

On May 25, 1966 this Court, by opinion reported in 267 N.C. 431, found no error in the decision of the Superior Court. On December 5, 1966 the Supreme Court of the United States granted *certiorari,* 385 U.S. 967, to review our decision. On February 7, 1967, the Department of Housing and Urban Development issued this directive to local housing authorities:

> "Since this is a federally assisted program, we believe it is essential that no tenant be given notice to vacate without being told by the Local Authority, in a private conference or other appropriate manner, the reasons for the eviction, and given an opportunity to make such reply or explanation as he may wish."

On April 9, 1967 the Supreme Court of the United States vacated our judgment and remanded the case to us "for such further proceedings as may be appropriate in the light of the February 7 Circular of the Department of Housing and Urban Development."

At the beginning of our reconsideration, we note that the circular was issued two years after the lease was executed; 17 months after the notice of termination was given; 16 months after the eviction order was entered in the Justice's court; 15 months after the eviction order was entered in the *de novo* hearing in the Superior Court; and 8 months after this Court found no error in the Superior Court judgment. The rights of the parties had matured and had been determined before the directive was issued. We quote from *Greene v. U. S.,* 376 U.S. 149:

> "The first rule of construction is that legislation [and directives] must be considered as addressed to the future, not the past. . . . (A) retrospective operation will not be given to a statute [or directive] which interferes with antecedent rights unless such be 'the unequivocal and inflexible import of its terms, and the manifest intention of the legislature. . . . (S)ince regulations of the type involved in this case are to be viewed as if they were statutes, this "first rule" of statutory construction appropriately applies. . . .' " See also *Greene v. McElroy,* 360 U.S. 474.

The North Carolina decisions are to the effect statutes are presumed to act prospectively only. *Wilson v. Anderson,* 232 N.C. 212,

59 S.E. 2d 836; *Hospital v. Guilford County,* 221 N.C. 308, 20 S.E. 2d 332; *Hicks v. Kearney,* 189 N.C. 316, 127 S.E. 205. The rules against retrospective construction have rigid application where the rights of the parties depend upon contract. *Moody v. Transylvania County,* 271 N.C. 384, 156 S.E. 2d 716; *Rostan v. Huggins,* 216 N.C. 386, 5 S.E. 2d 162. This rule is general in its application. 25 R.C.L. 787; 20 Minn. L. Rev. 775.

As directed by the order of the Supreme Court (386 U.S. 670), we have reconsidered our former decision (267 N.C. 341) in the light of the February 7, 1967 DHUD directive. After review, we conclude that 15 days prior to the expiration date of the lease, the Housing Authority, without explanation, notified the tenant that her lease would not be renewed. That procedure followed the terms of the lease. Before the expiration date the defendant demanded a hearing. The Manager of the Authority conferred with her counsel but not with her. She refused to vacate, charging her lease was being vacated because of her having been elected President of the Parents' Club. No evidence was offered as to the purposes of the club or that its activities conflicted with the interests of the Authority. The Manager of the Authority stated unequivocally under oath that the termination of the lease had no connection whatever with the tenant's activities in connection with the Parents' Club. Judge Bickett so found. The finding was supported by competent evidence and should be conclusive. The directive of February 7, 1967 has no retroactive force. All critical events took place months before that date. This view does not require us to consider the directive on any basis except that it has no application to this case.

The judgment entered by Judge Bickett in the Superior Court of Durham County is supported by the record. Our original decision stands. The re-examination discloses

No error.