Cauble v. City of Asheville

---

JULIUS R. CAUBLE v. CITY OF ASHEVILLE

No. 7928SC17

(Filed 19 February 1980)

1. **Municipal Corporations § 45— action against city—notice of claim**

    A letter sent by plaintiff to the mayor of defendant city constituted a sufficient *notice of claim to the city to give plaintiff standing thereafter to institute* a suit to require defendant city to pay into the county school fund all penalties paid for overtime parking in the city.

2. **Penalities § 1; Schools § 1— penalty or fine for violation of parking ordinance—when payable to school fund**

    In any case in which a person is prosecuted, convicted, and a fine imposed for the violation of a parking ordinance, the fine so imposed must be paid, by directive of Art. IX, § 7 of the N. C. Constitution, to the county school fund.

However, if a city chooses to maintain civil actions to recover the penalties imposed for parking violations, the proceeds of any judgment obtained would belong to the city, and the school fund would have no claim thereon.

**3. Penalties § 1; Schools § 1— fine for overtime parking—payment to county school fund**

Money collected by a city for overtime parking was collected by reason of G.S. 14-4 and G.S. 160A-175(b) and was properly payable to the county school fund as penalties collected for breach of the penal laws of the State.

APPEAL by defendant from *Bruce, Judge.* Judgment entered 27 October 1978, Superior Court, BUNCOMBE County. Heard in the Court of Appeals 18 September 1979.

Plaintiff, representing all the citizens, residents, and taxpayers of the City of Asheville, seeks to have the Court require the defendant to pay into the County School Fund all penalties paid for overtime parking in the City of Asheville. He further asks for treble the damages to be paid to the County School Fund and for counsel fees. The allegations of his complaint, other than jurisdictional allegations, may be summarized as follows: The City of Asheville has established parking meters pursuant to G.S. 160A-301 for the purpose of regulating the parking of vehicles within the City. Plaintiff is a citizen and resident of the City and has paid to the City "fines for overtime parking in parking places regulated by" the parking meters. He is informed and believes that other residents have also "made payments for parking overtime as a fine" to the City. He brings the action on his behalf and on behalf of all other persons similarly situated. "Defendant has established upon the streets of Asheville parking meters pursuant to General Statute 160A-301. Further that pursuant to the Asheville City Code, Section 28-117 and following, the City penalizes overtime parking by a fine of One ($1.00) Dollar or a greater amount depending on the type of overtime parking to be paid as a fine and penalty for said overtime parking." Notice of the claim has been given defendant. The "fines and forfeitures" derived from overtime parking are being misapplied by the defendant. Article 9, § 7 of the Constitution of North Carolina specifically requires that all fines and forfeitures such as those described in the complaint are to be applied exclusively for maintaining public schools in North Carolina. The misapplication of the "fines and forfeitures" directly affects plaintiff and all members of the class to the detriment of all citizens and taxpayers of the

City. On two previous occasions, similar actions have been maintained successfully against defendant. The continuing failure of defendant to abide by the Constitution is a "willful, knowing, open and flagrant violation of the laws of the State," and because of the "willful and wanton nature" of defendant's conduct, it should be subjected to punitive damages.

Defendant answered, denying any liability to the school fund but admitted that it had enforced and would continue to enforce its overtime parking ordinances as written.

The parties signed a set of stipulations which were dated 9 May 1978 and filed 5 June 1978. The stipulations listed those provisions of the City's ordinances which are applicable to the action. Stipulation No. 3 is quoted in its entirety as follows:

> Under ordinance #376, the City would place a notice on a motor vehicle indicating overtime parking. The individual who received this notice and who complied with the ordinance would deliver the penalty of $1.00 to an administrative clerk at the City's Police Department or would deposit the $1.00 in a receptacle maintained by the City for such purpose.

> Under ordinance #914, the City would place a parking citation on a motor vehicle indicating overtime parking. The individual who received this citation and who complied with the ordinance would deliver the appropriate penalty to an administrative clerk in the City Hall Building or would mail same to the City.

> Criminal warrants were taken out on occasions against persons who failed to pay the civil penalty.

The parties also stipulated that in a pretrial conference with Judge Robert Lewis, they had agreed that the action would be tried in two steps. The first step would be a hearing to determine whether Article IX, Section 7, Constitution of North Carolina is applicable. Should the court rule in favor of plaintiff, a second hearing would be held for the determination of the "clear proceeds" payable to the school fund.

The court heard the matter on 26 October 1978 upon the oral motion of defendant for partial summary judgment.[1] The court considered the stipulations of the parties, the documents introduced into evidence pursuant thereto, and the arguments of counsel, and entered partial summary judgment for plaintiffs. In so doing, he found that there is no genuine issue as to the following material facts:

1. That the plaintiff wrote a letter to the Mayor of the City of Asheville dated April 5, 1977, a copy of which is attached hereto and hereby made a part of this Order, and that said letter was received by the Office of the City Clerk on April 5, 1977, at 1:50 o'clock p.m.

2. That the City of Asheville issues parking citations in the form of City's Exhibit 9, a copy of which is attached hereto and hereby made a part of this Order.

3. That the penalties set forth on said citation, for the violation of the various parking ordinances set out in said citation, are collected by the City of Asheville in the manner set forth in Paragraph 3 of the stipulations dated May 9, 1978.

4. That the City of Asheville now and since 14 October 1976 collects said penalties under color of the ordinance denominated as Ordinance Number 914, City's Exhibit 2, a copy of which is hereto attached and hereby made a part of this Order; and that in addition, collects additional sums for delinquent payment of said penalty.

5. That the City of Asheville prior to the 14th day of October, 1976, and since the 22nd day of April, 1975, collected said penalties under color of the ordinance denominated as Ordinance Number 376, City's Exhibit Number 1, a copy of which is hereto attached and hereby made a part of this Order.

1. The parties stipulated on 15 December 1978, that during the 23 October 1978 Session of Superior Court of Buncombe County, the defendant made an oral motion for partial summary judgment, and plaintiff waived all notice requirements.

Upon these facts, the court concluded that each penalty assessed against persons under the provisions of Ordinances 914 and 376 does constitute "a penalty, forfeiture, or fine collected for a breach of the penal laws of the State within the meaning of the provisions of Article IX, Section 7, of the Constitution of the State of North Carolina," and that the Buncombe County Board of Education is entitled to the exclusive use of all clear proceeds collected under color of the provisions of the two ordinances subsequent to 22 April 1975. The court further concluded that the City of Asheville is a municipal subdivision of the State of North Carolina and that plaintiff had given proper demand to the City as required by Section 11 of the Code of the City.

From the judgment of the court, defendant appeals.

*McLean, Leake, Talman & Stevenson, by Joel B. Stevenson and Robert S. Swain, for plaintiff appellee.*

*Patla, Straus, Robinson & Moore, by Victor W. Buchanan, for defendant appellant.*

*Ernest H. Ball and R. Frank Gray, for North Carolina League of Municipalities, Amicus Curiae.*

MORRIS, Chief Judge.

[1] Defendant first raises the question whether plaintiff has standing to bring this action, contending that notice of claim was not given as required by the Code of the City of Asheville. Section 11 of the Code of the City of Asheville provides:

No action shall be instituted or maintained against the city upon any claim of demand whatsoever of any kind or character, until the claimant shall have first presented his or her claim or demand, in writing, to said council, and said council shall have declined to pay or settle the same as presented, or for ten days after such presentation neglected to enter or cause to be entered upon its minutes its determination in regard thereto, . . .

On 5 April 1977, a letter addressed to the Mayor of the City of Asheville, written by plaintiff's former counsel, was hand delivered to the City Clerk's office. The letter was as follows:

> This is to give notice pursuant to Section 12 of the Asheville City Code that Mr. Julius R. Cauble will file an action against the City of Asheville to prevent the collection and disbursement of the fines and forfeitures collected as overtime parking fines. That such action is based upon the fact that said collections and disbursements as they are now being carried forth by the City of Asheville are unconstitutional. Further that the City of Asheville should pay to the Buncombe County School Fund all fines and forfeitures so collected since January 1, 1963.

Defendant, by its answer, admitted receiving this letter but contends it is not sufficient "claim or demand" under Section 11 of the Code. We note that the letter refers to Section 12 of the Code. Section 12 is entitled "Notice prerequisite to action for damages against the city." That section is intended to apply to actions for damages for injury to person or property through the alleged negligence of the City. It has no application here. Use of Section 12 rather than Section 11 in the letter was obviously an inadvertence. In any event, we think the letter was substantial compliance, with respect to notice; ". . . 'a substantial compliance with the (ordinance) is all that is required, and the notice need not be drawn with the technical nicety necessary in pleading.' McQuillan on Municipal Corporations (Vol. VI), section 2718." *Graham v. City of Charlotte*, 186 N.C. 649, 659, 120 S.E. 466, 470 (1923). *See also* dissent of Justice Lake, concurred in by Justice Huskins, in *Johnson v. City of Winston-Salem*, 282 N.C. 518, 193 S.E. 2d 717 (1973), and cases cited therein.

Defendant draws distinctions between the word "notice" and the words "claim" and "demand." We certainly agree that there are differences. Nevertheless, the letter leaves no doubt but that the writer claims that the present system of the City in its use of the funds collected from overtime parking is unconstitutional and that those funds should be paid to the Buncombe County School Fund. This is substantial compliance and sufficient. This assignment of error is overruled.

We now turn to the second question raised by this appeal, which is not so easily answered.

Article IX, Section 7, of the Constitution of North Carolina provides:

All moneys, stocks, bonds, and other property belonging to a county school fund, *and the clear proceeds of all penalties and forfeitures* and of all fines *collected in the several counties for any breach of the penal laws of the State*, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools. (Emphasis supplied.)

In *Board of Education v. Town of Henderson*, 126 N.C. 689, 691, 36 S.E. 158, 159 (1900), the Court said:

To our minds there is a clear distinction between a fine and a penalty. A "fine" is the sentence pronounced by the court for a violation of the criminal law of the State; while a "penalty" is the amount recovered—the penalty prescribed for a violation of the statute law of the State or the ordinance of a town. This penalty is recovered in a civil action of debt. (Citations omitted.) A municipal corporation has the right, by means of its corporate legislation, commonly called town ordinances, to create offenses, and fix penalties for the violation of its ordinances, and may enforce these penalties by civil action; but it has no right to create criminal offenses.

Experience proved that it was difficult, if not impossible, to enforce the ordinances of municipalities by civil actions for the collection of penalties, so it became necessary for the General Assembly to make the violation of municipal ordinances a criminal offense. This was done by G.S. 14-4 which provides: "If any person shall violate an ordinance of a county, city, or town, he shall be guilty of a misdemeanor and shall be fined not more than fifty dollars ($50.00), or imprisoned for not more than thirty days," and was first enacted in the Session of 1871-72.

The Court in *Henderson* further said:

But whether the criminal offenses created by the violation of town ordinances [under Section 3820 of The Code (now G.S. 14-4)], are tried before the mayor, or before a justice of the peace, they are State prosecutions, in the name of the State, or for violations of the criminal law of the State, and at the expense of the State (citation omitted), and the city can not be charged with the costs of such prosecutions.

. . .

It must therefore follow that all the fines the defendant has collected upon prosecutions for violations of the *criminal laws* of the State, whether for violations of *its ordinances* made criminal by section 3820, of The Code, or by other criminal statutes, such fines belong to the common school fund of the county. It is thus appropriated by the Constitution, and it can not be diverted or withheld from this fund without violating the Constitution. This is not so with regard to "penalties" which the defendant may have sued for and collected out of offenders violating its ordinances. These are not penalties collected for the *violation of a law of the State*, but of a town ordinance. But wherever there was a fine imposed in a State prosecution for a misdemeanor under section 3820 of the Code, it belongs to the school fund, and, as we have said, must go to that fund.

126 N.C. at 692, 36 S.E. at 159.

The question before the Court in *School Directors v. City of Asheville*, 128 N.C. 249, 38 S.E. 874 (1901), was whether Article IX, Section 5, of the Constitution of North Carolina applied to "all and the whole" of the *fines* which were collected by the city authorities for violations of municipal ordinances in prosecutions for criminal offenses under section 3820 of The Code (now G.S. 14-4). The question was before the Court on appeal by defendant from the overruling of its demurrer to plaintiff's complaint. The defendant contended that "clear proceeds" under the Constitution meant such of the fines, penalties, and forfeitures as have not been appropriated by act of the General Assembly to other purposes, and that since the General Assembly had conferred upon the City of Asheville the power to appropriate the fines and penalties, there were no clear proceeds to which the school fund was entitled. The Court, following *Henderson*, held that *all* fines so collected belonged to the school fund of the county, having been appropriated by the Constitution. Further, the Court held that "it applies also to 'penalties', the collection of which is enforceable by proceedings before a Justice of the Peace or municipal officers empowered by law to enforce the collection of such penalty in a criminal action under section 3820 of The Code (now G.S. 14-4), for, in such cases, though the word 'penalty' is used, it is really a 'fine'." 128 N.C. at 251, 38 S.E. at 875.

The matter was again before the Court in *School Directors v. City of Asheville*, 137 N.C. 503, 50 S.E. 279 (1905). The cause had been referred to a referee for determination of the amount due under the holding of the Court in *School Directors v. City of Asheville*, 128 N.C. 249, 38 S.E. 874 (1901), and from judgment entered on plaintiff's motion for judgment in the amount set by the referee, defendant appealed. On this appeal, defendant argued that the General Assembly had the same power to appropriate to a municipality a portion or all of the fines collected for the violation of its ordinance in the same manner and to the same extent as penalties. The Court reiterated the position it had taken in the earlier appeal and held further that the Legislature does not have the power to appropriate to the municipal corporation all or any part of the fines imposed upon conviction of misdemeanors committed by violating the ordinances of the City of Asheville. The Court stated "It is settled that the Legislature may give to cities and towns the entire penalty incurred for the violation of ordinances to be recovered in a civil action, but when the State interposes and declares the violation of an ordinance a misdemeanor, the fine imposed for the criminal offense must go in the way directed by the Constitution." 137 N.C. 508, 509, 50 S.E. at 281.[2]

---

2. The opinion in *School Directors v. City of Asheville*, 128 N.C. 249, 38 S.E. 874, was filed 14 May 1901. On 23 November 1901, in a suit brought by members of the City Board of Education to compel the payment of fines collected in the Police Justice's Court to the school fund, judgment was entered for defendant in the Superior Court. On appeal to the Supreme Court (*Bearden v. Fullam*, 129 N.C. 477, 40 S.E. 204 (1901)), the Court said the suit should be against the City, but in its opinion stated:

> We can not let this case pass off without an unqualified expression of our disapproval of the conduct of those who have caused this litigation by their refusal to turn these fines over to the proper fund. We are met with an open defiance of two most solemn decisions of this Court on the matter which is the subject of this litigation. In the case of *Board of Education v. Henderson*, 126 N.C., 689, we decided that all fines for violation of the criminal laws of the State, whether the fines were for violations of town ordinances made misdemeanors by section 3820 of The Code, or other criminal statutes, were appropriated by Article IX, sec. 5, of the Constitution for establishing and maintaining free public schools in the several counties. And that case was reviewed and approved in *School Directors v. City of Asheville*, 128 N.C., 249, and yet, in the face of these two decisions, it is sought to raise this question again. We are surprised at the continual violation of the law and the persistent refusal of the authorities of the city of Asheville to conform their actions to the decisions of this Court on the matter before us; and we would be untrue to ourselves if we did not express in unmistakable terms our disapprobation of their

We now turn to the provisions of the ordinances of the City of Asheville. Ordinance 376 as amended provides:

It shall be unlawful for any person or operator to cause, allow, permit or suffer any vehicle registered in his name, or under his control, to be parked overtime or beyond the lawful periods of time as above set forth.

Section 28-117 Asheville City Code.

Under Ordinance 376, the City, through its agent, placed a notice on a motor vehicle which was parked overtime, and under Ordinance 914, a parking citation is placed on the motor vehicle to indicate a violation. Under both ordinances, the individual so notified and who wanted to comply with the ordinance, would pay the appropriate penalty (set out on the citation) to the Police Department (#376), Clerk at City Hall (#914), or deposit the money in a receptacle maintained by the City for that purpose (#376), or mail the money to the City (#914).

Occasionally criminal warrants were issued against a person who failed to pay the penalty.

G.S. 160A-175(c) provides:

An ordinance may provide that violation shall subject the offender to a civil penalty to be recovered by the city in a civil action in the nature of debt if the offender does not pay the penalty within a prescribed period of time after he has been cited for violation of the ordinance.

[2] There can be no question that in any case in which a person is prosecuted, convicted, and a fine imposed for the violation of a parking ordinance, the fine so imposed must be paid, by directive of the Constitution of North Carolina, to the county school fund. It is also clear that had the defendant chosen to maintain civil actions to recover the penalties imposed for parking violations, the proceeds of any judgment obtained would belong to the City, and

conduct. Their course is a dangerous example, and an incentive to others to defy the rulings of the Supreme Court of the State, and it manifests as well an indifference to public education which ought not to characterize the ruling authorities of ane [sic] of the largest and most progressive cities of the State.

129 N.C. at 479, 40 S.E. at 205.

the school fund could have no claim thereon. *Board of Education v. Henderson, supra, School Directors v. Asheville, supra.*

[3] The defendant has not chosen to follow the provisions of G.S. 160A-175(c) either in its ordinances or in practice.[3] The ordinances do not make the nonpayment of the overtime parking penalty unlawful. The overtime parking itself is the act which is declared unlawful. The money collected by reason of overtime parking is collected by reason of G.S. 14-4 and G.S. 160A-175(b) and is properly payable to the county school fund as penalties collected for breach of the penal laws of the State.

We are advertent to the holding in *Tridyn Industries, Inc. v. American Mutual Insurance Co.*, 296 N.C. 486, 251 S.E. 2d 443 (1979), which was filed 5 February 1979, the judgment in the case before us having been entered 27 October 1978. There Justice Exum, speaking for a unanimous Court (Justice Brock did not participate), held that a partial summary judgment entered for the plaintiff on the issue of liability only and leaving for determination at a subsequent trial the issue of damages, is not immediately appealable. There the Court declined to issue its writ of certiorari under Rule 21 of the Rules of Appellate Procedure, 287 N.C. 728, because there appeared to be a substantial legal dispute between the parties as to what items of damages were covered under the policy, if it afforded any coverage at all. Here we are not confronted with that problem. We have, therefore, treated the appeal itself as a petition for writ of certiorari, which we have granted in order that the questions raised might be answered prior to a determination of the question of damages.

Affirmed.

Judges PARKER and MARTIN (Robert M.) concur.

---

3. The provisions of this section of G.S. 160A-175 are not before us for interpretation, and we make no comment with respect to whether a municipality's following its provisions would relieve it from the mandate of Article IX, Section 7 of the Constitution of North Carolina.