JULIUS R. CAUBLE v. CITY OF ASHEVILLE

No. 150PA84

(Filed 5 November 1985)

**1. Penalties § 1; Schools § 1— fines for overtime parking—breach of State penal law—use for county schools**

The money penalty collected by the City of Asheville from a motorist who violates its ordinance prohibiting overtime parking constitutes a penalty or fine collected for a breach of a State penal law although the motorist has not been convicted for violating G.S. 14-4. Therefore, the "clear proceeds" of funds received from overtime parking violations must be paid to the Buncombe County Finance Officer for distribution pursuant to G.S. 115C-437 (replacing former G.S. 115-100.35).

Cauble v. City of Asheville

2. Penalties § 1; Schools § 1— fines for overtime parking—clear proceeds—deductions for costs of collection

Reasonable costs of collection may constitutionally be deducted from the gross proceeds of the fines collected by a municipality for overtime parking in determining the "clear proceeds" of such fines which must be paid by the municipality to the county finance officer for maintaining free public schools. However, the costs of collection do not include the costs associated with enforcing the ordinance but are limited to the administrative costs of collecting the funds. Art. IX, § 7 of the N. C. Constitution.

Justice MARTIN did not participate in the consideration or decision of this case.

Justice EXUM dissenting.

Justice MEYER joins in this dissenting opinion.

ON discretionary review, pursuant to N.C.G.S. § 7A-31, of the unanimous decision of the Court of Appeals, reported at 66 N.C. App. 537, 311 S.E. 2d 889 (1984), reversing and remanding the judgment entered by *Lewis, J.,* on 14 October 1982 at Asheville, BUNCOMBE County. The judgment was entered out of session pursuant to a stipulation of the parties.

*Swain, Stevenson and Freeman, by Joel B. Stevenson and Robert S. Swain, for plaintiff-appellant.*

*Patla, Straus, Robinson & Moore, P.A., by Victor W. Buchanan and Harold K. Bennett, for defendant-appellee.*

*Tharrington, Smith & Hargrove, by Richard A. Schwartz and Ann L. Majestic, for Amicus Curiae North Carolina School Boards Association, Inc.*

*Fred P. Baggett and Laura Kranifeld, for Amicus Curiae North Carolina League of Municipalities.*

BRANCH, Chief Justice.

This action was brought in the name of plaintiff, for himself, and for the citizens, residents and taxpayers of the City of Asheville to compel the City of Asheville to pay into the County School Fund of Buncombe County all fines and forfeitures paid for overtime parking to be used exclusively for maintaining free public schools in Buncombe County.

At a pretrial conference held before Judge Robert D. Lewis, Resident Superior Court Judge of the Twenty-Eighth District, it was stipulated, *inter alia,*

> that this civil action would be tried in two steps. First, a hearing would be held to determine whether or not Article IX, Section 7 of the Constitution of North Carolina applies to the civil penalties for overtime parking. If the Court should rule in favor of the Plaintiff in that respect, a second hearing would be held at which a determination of the 'clear proceeds' of the civil penalties could be made.

Defendant in apt time moved for summary judgment and the motion was heard by Judge R. Michael Bruce at the 23 October 1978 Civil Session of Buncombe County Superior Court. After considering the documents introduced, stipulations of the parties and argument of counsel, Judge Bruce, after noting that there remained an unresolved issue, found facts, entered conclusions of law, and ordered that

> the Board of Education of the County of Buncombe have and recover of the Defendant City of Asheville an amount equal to the clear proceeds of all penalties, forfeitures, or fines collected for the violation of parking ordinances under color of the provisions of Ordinance 914 and Ordinance 384 of the City of Asheville at such time as said amounts have been determined pursuant to the provisions of this Order.

It was further ordered that until final determination of this litigation all proceeds collected under the City's Ordinance 914 be retained in a separate fund.

Defendants appealed and the Court of Appeals affirmed the judgment of the trial court. *Cauble v. City of Asheville,* 45 N.C. App. 152, 263 S.E. 2d 8 (1980). This Court allowed defendant's petition for discretionary review and affirmed the principal issue. We reversed that part of the Court of Appeals' decision which affirmed the portion of Judge Bruce's order directing that the "clear proceeds" be paid directly to the Board of Education of Buncombe County rather than to the Buncombe County Finance Officer for distribution according to N.C.G.S. § 115-100.35 (repealed 1981). The cause was remanded for entry of judgment consistent with the Court's opinion. *Cauble v. City of Asheville,* 301 N.C. 340, 271 S.E. 2d 258 (1980) (*Cauble II*).

Upon remand this matter came on to be heard before Judge Robert D. Lewis, Resident Judge of the Twenty-Eighth Judicial District, who, sitting without a jury, reviewed the record proper, received additional evidence, heard argument of counsel and after finding additional facts, in pertinent part, concluded as a matter of law that:

1. The term "clear proceeds" means the amount collected by the City for overtime parking and delinquent overtime parking violations undiminished by direct and indirect costs or expenses of collection.

Defendant appealed, assigning as error the trial judge's definition of the term "clear proceeds." In a unanimous opinion by Chief Judge Vaughn (later Associate Justice), reported at 66 N.C. App. 537, 311 S.E. 2d 889 (1984) (*Cauble III*), the Court of Appeals defined "clear proceeds" and formulated a test for determining the "clear proceeds" of monies received from all parking violations. The Court of Appeals thereupon reversed the trial court's definition of "clear proceeds" and the trial court's holding that the proceeds from all parking violations collected between 22 April 1975 and 30 June 1982 was *res judicata* upon the Board of Education. The cause was remanded for an accounting consistent with the Court of Appeals' definition of "clear proceeds."

[1] Plaintiff Julius R. Cauble petitioned this Court for discretionary review pursuant to N.C.G.S. § 7A-31(c) and we allowed his petition on 28 August 1984. After hearing oral arguments this Court ordered that the parties submit new briefs addressing the following question: "Does the money penalty collected by the City of Asheville from a motorist who violates its ordinance prohibiting overtime parking constitute a penalty or fine collected for the breach of a State penal law, if the motorist has not been convicted for violating N.C.G.S. 14-4?" *Cauble v. City of Asheville,* --- N.C. ---, 326 S.E. 2d 630 (1985).

We had heretofore answered this question in *Cauble II.* There we stated that:

The Asheville Code makes it unlawful to park overtime. G.S. 14-4 specifically makes criminal the violation of a city ordinance, unless 'the council shall provide otherwise' pursuant to G.S. 160A-175(b). Thus, where, as here, the ordinances do

not provide otherwise, a person who violates the overtime parking ordinance also breaches the penal law of the State. . . . Consequently, fines collected for overtime parking constitute fines collected for a breach of the penal laws of the State. We, therefore, hold that the clear proceeds of all penalties, forfeitures and fines collected for breaches of the ordinances in question remain in Buncombe County and be used exclusively for the maintenance of free public schools.

*Id.* at 345, 271 S.E. 2d 261 (citations omitted).

We reaffirm that holding and therefore answer the question posed in the affirmative.

[2] Having determined that the "clear proceeds" of all funds received from traffic violations must be paid to the Buncombe County Finance Officer for distribution pursuant to N.C.G.S. § 115C-437 (replacing former N.C.G.S. § 115-100.35), we now turn to the original principal question presented by this appeal, that is, the meaning and determination of "clear proceeds."

Article IX, Section 7 of the North Carolina Constitution provides as follows:

All moneys, stocks, bonds, and other property belonging to a county school fund, and the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

In *State v. Maultsby*, 139 N.C. 583, 51 S.E. 956 (1905), the Court considered a statute which provided that an informant should receive one half of the fine imposed as a result of a conviction based on information furnished by him. Holding the statute to be unconstitutional, the Court, in part, stated:

[I]t is otherwise as to 'fines.' From their very nature, being punishment for violation of the criminal law, they are imposed in favor of the State and belonging to the State, the General Assembly cannot appropriate the clear proceeds of fines to any other purpose than the school fund. By 'clear proceeds' is meant the total sum *less only the sheriff's fees*

*for collection*, when the fine and costs are collected in full. This also has been fully discussed and settled. *Board of Education v. Henderson*, 126 N.C., 689; *School Directors of Asheville*, 137 N.C., 508.

*Id.* at 585, 51 S.E. at 956 (emphasis added).

Our Court considered the disposition of funds upon forfeiture of an appearance bond in a criminal case in *Hightower v. Thompson*, 231 N.C. 491, 57 S.E. 2d 763 (1950). There the Court held that "[t]he clear proceeds of this forfeiture are for the use of the public school fund; . . . and the 'clear proceeds' have been judicially defined as the amount of the forfeit less the cost of collection, meaning thereby the citations and process against the bondsman usual in the practice." *Id.* at 493-94, 57 S.E. 2d at 765.

We find this interesting and pertinent language in *School Directors v. Asheville*, 137 N.C. 503, 50 S.E. 279 (1905). We quote:

If we adopt the argument of counsel, we must hold that *fines* are in the same class as penalties, and, following *Katzenstein's case*, we would be forced to the conclusion that the disposition of both are entirely within the power of the Legislature, which nullifies the clearly expressed purpose of the people, that they shall go into the county school fund. If we stop short of this conclusion and limit the words 'clear proceeds' to the power to dispose of only a part of the fine, we might well say that the power of the Legislature is exhausted by giving to the clerk or sheriff a reasonable commission for collecting the fines—to be deducted from the amount before paying it over to the treasurer of the school fund. The words 'clear proceeds' could thus have full force and operation without giving the unlimited power claimed by the defendant. By reference to section 3739 of The Code, regulating the fees of the clerk, we find that he is given '5 per cent commission on all fines, penalties, amercements, and taxes paid to him by virtue of his office.' We might well conclude that the 95 per cent of the fines constitutes the 'clear proceeds,' and that this, or such other reasonable commission as should be fixed, exhausted the power of the Legislature to appropriate the amount so collected and was in the contemplation of the draftsman in using the term 'clear proceeds' as applied to fines.

*Id.* at 511-12, 50 S.E. at 282.

The Court of Appeals interpreted these cases to hold that the term "clear proceeds" as used in Article IX, Section 7 is synonymous with net proceeds and further concluded that the costs of collection should be deducted from the gross proceeds of monies received for traffic violations in order to determine the net or "clear proceeds." *Cauble III.* We agree with the reasoning of the Court of Appeals and therefore hold that reasonable costs of collection constitutionally may be deducted from the gross proceeds of the fines collected by the City of Asheville for overtime parking. There remains the question of what deductions are permissible.

The Court of Appeals in *Cauble III,* after noting that the General Assembly had not seen fit to provide municipalities with a formula for determining "clear proceeds,"[1] held "[t]hat the test

---

1. Subsequent to the filing of the opinion in *Cauble III* the General Assembly enacted legislation affecting the proceeds of parking violations.

On the 15th day of July 1985 the General Assembly ratified Chapter 764, H.B. 533, entitled "An Act to Classify Minor Traffic Offenses as Infractions and to Provide a Procedure for the Disposition of Such Infractions by the Courts." The Act, *inter alia,* amended Chapter 14 of the General Statutes by adding a new section 14-3.1 defining an infraction as follows: an infraction is a non-criminal violation of the law not punishable by imprisonment. N.C.G.S. § 14-4 was also amended by adding a new subsection (b) which provided that violators of parking ordinances shall be responsible for an infraction and shall be required to pay a *penalty* of not more than $50.00. The amending act also provided that "[t]he proceeds of penalties for infractions are payable to the county in which the infraction occurred for the use of the public schools." This act was made effective on 1 July 1986.

On the 17th day of July 1985 the General Assembly enacted Chapter 779, H.B. 1079. This bill provides:

"AN ACT TO CLARIFY G.S. 115C-437 BY ADDING A DEFINITION OF CLEAR PROCEEDS.

The General Assembly of North Carolina enacts:

Section 1. G.S. 115C-437 is amended by adding the following language at the end of the first sentence: 'The clear proceeds of all penalties and forfeitures and of all fines collected for any breach of the penal laws of the State, as referred to in Article IX, Sec. 7 of the Constitution, shall include the full amount of all penalties, forfeitures or fines collected under authority conferred by the State, diminished only by the actual costs of collection, not to exceed ten percent (10%) of the amount collected.'

Sec. 2. This act shall become effective upon ratification.

for determining permissible deductions from gross monies taken in is that the item to be deductible must bear a reasonable relation to the costs of collection of the fine." 66 N.C. App. at 543, 311 S.E. 2d at 893. In so holding the Court of Appeals must have realized the difficulty in balancing the equities between the constitutionally mandated directive to set aside revenues for the public schools as declared in Article IX, Section 7 and the possible resulting economic penalties which might be forced upon the municipalities charged with the collection of fines as a result of overtime parking. The Court also apparently recognized, and we think correctly so, the futility of trying to fashion a court-made specific mathematical formula for determining costs of collection and left the application of the formula to trained accountants.

We believe that the well reasoned and fully documented opinion in *Cauble III* reached the proper result by holding that the test for determining permissible deductions must bear a reasonable relation to the cost of collection of the fine and by noting that qualified accountants might properly resolve the question.

In reviewing the cases cited by Chief Judge Vaughn in *Cauble III*, we found some evidence of the types of expenses that this Court has considered to be proper costs of collection. In *Maultsby* the Court stated that "[b]y 'clear proceeds' is meant the total sum *less only the sheriff's fees for collection, when the fine and cost are collected in full.*" 189 N.C. at 585, 51 S.E. at 956 (emphasis added). In *Hightower* the Court stated that "the 'clear proceeds' have been judicially defined as the amount of the forfeit

In the General Assembly read three times and ratified, this the 17th day of July, 1985."

The enactment of these amendments is not under attack in the case before us. Further it is generally recognized that a statute or an amendment to a statute will be given prospective effect only, and will not be construed to have retroactive effect unless such intent is clearly expressed or arises by necessary implication from its terms. *Housing Authority v. Thorpe*, 271 N.C. 468, 157 S.E. 2d 147 (1967), *rev'd on other grounds*, 393 U.S. 268, 21 L.Ed. 2d 474, 89 S.Ct. 518 (1969); *Lester Brothers v. Insurance Company*, 250 N.C. 565, 109 S.E. 2d 263 (1959); *Bank v. Derby*, 218 N.C. 653, 12 S.E. 2d 260 (1940). We find nothing in the language of these Acts which clearly expresses or by necessary implication indicates that the legislature intended that either of the acts be retroactive. Therefore, the Act defining "clear proceeds" could only be effective as to monies collected because of traffic violations occurring on and after 17 July 1985. The Act decriminalizing traffic violations by its terms is effective on 1 July 1986.

*less the cost of collection, meaning thereby the citations and process against the bondsman usual in the practice."* 231 N.C. at 493-94, 57 S.E. 2d at 765. In *School Directors v. Asheville*, we emphasize the language "that the power of the Legislature is exhausted by giving to the clerk or sheriff a reasonable commission for collecting the fines—to be deducted from the amount before paying it over to the treasurer of the school fund." 137 N.C. at 511-12, 50 S.E. at 282. In our opinion these cases indicate that the costs of collection do not include the costs associated with enforcing the ordinance but are limited to the administrative costs of collecting the funds. If we were to take the position that the costs of enforcing the penal laws of the State were a part of collection of fines imposed by the laws, there could never by any *clear proceeds* of such fines to be used for the support of the public schools. This would in itself contravene that portion of Article IX, Section 7 of the North Carolina Constitution which directs that clear proceeds of penalties, forfeitures and fines collected for any breach of the penal laws of the State shall be applied to the public schools. We do not believe that the framers of our Constitution intended such a result. Conversely it would be an impractical and harsh rule to deny municipalities the reasonable costs of collections.

We have examined the remaining assignments of error and conclude that the Court of Appeals correctly decided each of them.

The decision of the Court of Appeals is

Affirmed.

Justice MARTIN did not participate in the consideration or decision of this case.

Justice EXUM dissenting.

For the reasons stated in my dissenting opinion in *Cauble v. City of Asheville*, 301 N.C. 340, 271 S.E. 2d 258 (1980), I continue to believe that the parking penalties voluntarily paid by motorists who violate the city's parking ordinances are neither penalties nor fines collected "for any breach of the penal laws of the state" under Article IX, Section 7 of the North Carolina Constitution.

Contrary to the majority's earlier reading of it in 301 N.C. at 343-45, 271 S.E. 2d at 259-61, I think *Board of Education v. Henderson*, 126 N.C. 689, 36 S.E. 158 (1900), supports my view of the matter. The Court there held that monies the city collected for violating its ordinances were "not penalties collected for the *violation of a law of the state,* but of a town ordinance," even though violations of town ordinances were made criminal offenses by section 3820 of the Code, the predecessor to N.C. Gen. Stat. § 14-4. 126 N.C. at 692, 36 S.E. at 159. (Emphasis original.) Relying on *Board of Education v. Henderson,* an expert in the field of local government finance has written:

> Article IX, § 7, of the State Constitution directs that 'the clear proceeds of all *penalties* and *forfeitures* and all *fines* collected in the several counties for any breach of the penal laws of the state' (emphasis added) remain in the county of collection, to be used for maintaining the public school system. A fine, of course, is imposed by a court when a person has been convicted of violating a state law. An example of a forfeiture occurs when a person free on bail does not appear in court; the bail is forfeited.
>
> Penalties create some confusion. A penalty is recoverable in a *civil* action; the unit brings the action much as an individual might sue to recover a debt. A penalty therefore differs from a fine, which results from a *criminal* action. Several state statutes provide for their enforcement by suit for a penalty; for example, G.S. 143-215.114 permits enforcement of the air pollution control statutes in this manner. It is the 'clear proceeds' of penalties recovered in these actions to which the school fund is entitled. *Confusion occasionally arises, however, because the statutes authorize cities (G.S. 160A-175) and counties (G.S. 153A-123) to enforce their ordinances by 'penalties.' The most common use of this power is with parking ordinances. This type of penalty need not, despite its label, be remitted to the schools. It is assessed to enforce local ordinances, while the Constitution intends penalties that enforce the penal laws of the state.*

D. Lawrence, *Local Government Finance in North Carolina* 57 (Institute of Government 1977) (emphasis supplied).

A holding of the Supreme Court of Michigan in *Delta County v. City of Gladstone*, 305 Mich. 50, 8 N.W. 2d 908 (1943), also bolsters my view. The issue in that case was whether certain fines received by the city as a result of prosecutions for violations of city ordinances for various offenses, such as "drunk and disorderly," "reckless driving," "disorderly" and "drunk," were fines collected "for any breach of the penal laws," as those terms were used in the Michigan Constitution. The cases in which the fines were imposed were also punishable, but had not been punished or prosecuted, under state statutes. The Court held that such fines were not collected for any breach of the penal laws of the state since they were collected "under ordinances enacted by the city, a creature of the sovereignty, and were not the direct result of the exercise of sovereign or state legislative power." 305 Mich. at 54, 8 N.W. 2d at 909.

I would hold that none of the parking fines collected are properly allocable to the Buncombe County School Fund.

Justice MEYER joins in this dissenting opinion.