IN THE MATTER OF: BOND FORFEITURES OF LEXINGTON MALCOLM DUNLAP, II, AND BROOKS ALAN MOORE

No. 825SC1363

(Filed 17 January 1984)

**Arrest and Bail § 11.3— transfer of cases to another county—which county entitled to bail bond forfeitures**

The county in which defendants committed the crimes charged and were indicted rather than the county to which their cases were transferred for trial was entitled to bail bond forfeitures when defendants failed to appear for trial.

APPEAL by petitioners New Hanover County and New Hanover County Board of Education from *Llewellyn, Judge.* Order entered 6 August 1982 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 29 November 1983.

Lexington Malcolm Dunlap, II and Brooks Alan Moore were indicted in Brunswick County on illicit drug trafficking charges. Before they were released from the Brunswick County jail they were required to post appearance bonds, Dunlap in the amount of $150,000 and Moore $75,000. Later an order was entered joining the two cases with those of four other co-defendants for trial; and by separate order the various cases were transferred to New Hanover County because of the backlog of cases in Brunswick County and also because its courtroom was inadequate to handle the trial of more than one defendant at a time. When the cases were called for trial in New Hanover County neither Moore nor Dunlap appeared and their bail bonds were forfeited. Several months later Dunlap was apprehended, an order was entered reducing his bond liability to a certain extent, and his case was transferred back to Brunswick for either trial or sentencing. Moore has not been apprehended and his case is still pending in New Hanover County.

Petitions claiming the forfeited bonds were filed jointly by New Hanover County and the New Hanover County Board of Education, and separately by the Brunswick County Board of Education. After a hearing on the various petitions, an order was entered directing that the forfeitures be turned over to the Brunswick County Board of Education.

*Hogue, Hill, Jones, Nash & Lynch, by William L. Hill, II, for petitioner appellant New Hanover County Board of Education.*

*Robert W. Pope and Robert T. Davis, Jr. for petitioner appellant New Hanover County.*

*Prevatte and Prevatte, by James R. Prevatte, Jr. and R. Glen Peterson, for petitioner appellee Brunswick County Board of Education.*

PHILLIPS, Judge.

Which county is entitled to the forfeited bail bonds? Brunswick County, where the crimes were committed and the defendants were indicted, or New Hanover County, where the trial was to occur and the defendants failed to appear? That is the sole question for our determination; one that has not been answered by either of our appellate courts since such laws as now relate to the situation involved were adopted or enacted.

In seeking guidance from the law we start and almost end with a provision of the North Carolina Constitution that, in somewhat the same form, was first adopted in 1868. Article IX, Section 7 provides that "the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools." The words "clear proceeds" in this section have been construed by our Supreme Court to mean the total amount of the fine, penalty, or forfeiture, less only the cost of collection, which, for a bail bond, is the cost of citing and issuing process against the bondsman in the usual manner. *Hightower v. Thompson*, 231 N.C. 491, 57 S.E. 2d 763 (1950). But neither the Constitution nor any statute enacted by the General Assembly states which county is entitled to receive forfeitures in cases that are started in one county and removed to another; and the only case in our appellate jurisprudence in which the question was presented, though relied on by each of the parties for different reasons, has no precedential value, because the circumstances that existed when that case was decided do not exist now, and the laws that applied then have been replaced by other laws.

In *Findley v. Erwin*, 6 N.C. (2 Mur.) 244 (1813), the contesting counties were Wilkes, where certain persons had been indicted for a criminal conspiracy committed there, and Burke, where the case was transferred to, and the prize sought was the fines that the criminal defendants paid the Burke court after their conviction. That the prize there was a fine, whereas here it is a forfeiture, is inconsequential; fines and forfeitures now have the same footing under the Constitution and before the constitutional provision was adopted they had the same footing under the statutes. It is significant, though, that at that time each county defrayed the cost of operating its courts and criminal justice system; the criminal case transfer statute required transferring counties to pay trial counties for all prosecution expenses not collected from transferred defendants; and the statute permitting counties to keep fines and forfeitures did not specify how the funds so received had to be used. In holding that Wilkes County, which commenced the prosecution, rather than Burke, which finished it, was entitled to the fines, the Court concluded that fines had been given to the counties by the Legislature in order to enable them to pay court and prosecution expenses that could not be collected from parties, and that since transferring counties had to pay for transferred cases that were lost, it was only right that they receive the collections when the cases were won. The Court also said that awarding the fines to the county where the crime was committed would serve public policy by encouraging counties to expose and suppress crime; a point of doubtful value, it would seem, since it is just as likely that giving the fines to counties that convict and punish those guilty of crime would serve public policy equally as well by encouraging other counties to do likewise. But the ground that the decision rested upon was the transferring county's liability for uncollected prosecution and court expenses.

But the case presented to us is entirely different from *Findley*. Under the unified court system that has existed since 1965, the State, rather than the counties, defrays the expense of operating the courts and the criminal justice system. G.S. 7A-300(a). Though the counties furnish the facilities for the courts, they are reimbursed for their use by a certain part of the court costs in criminal cases, G.S. 7A-304, and the only obligation a county that transfers a criminal case now has is to pay the receiving county the prisoner's "jail expenses, unless they are collected

In re Dunlap

from the prisoner." G.S. 6-40. A prisoner's jail expenses are now $5 a day. G.S. 7A-313. And unlike the earlier statute which did not specify how fines and forfeitures had to be used, under the constitutional provision now in force fines and forfeitures must be used for the public schools.

In this instance, nothing is owed New Hanover County, since neither criminal defendant was jailed there before the bonds were forfeited; but even if the defendants had been jailed there it would be irrelevant to this case, in our opinion, since there is simply no legal or logical relationship between a transferring county's contingent liability for jail fees and a forfeited bail bond that cannot be used to pay jail fees or any other court expenses but goes to the school fund.

In this uncharted situation the only beacon left to guide us is public policy, and we decide the case on that basis. Public policy, we think, requires that the forfeitures be awarded to Brunswick County, the transferring county, for one transcendent reason. Neither justice nor policy requires that counties be rewarded for the slight inconveniences that they suffer when criminal cases from other counties are transferred to them for trial; other counties reciprocate and such things are compensated for in the long run by the public good, which inures to transferring and receiving counties alike. But justice does require, we think, that counties whose peace and dignity have been violated by criminals be compensated therefor whenever payment is made by the violators. Fines and forfeitures are, in effect, payments extracted from violators of the penal laws; and the counties entitled to them, we believe, are those whose penal laws have been violated. It seems to us that the idea of payment for violation of the penal laws is inherent in the policy of giving fines and forfeitures to the counties, and has been from the beginning. Certainly, we see no constitutional or statutory purpose, or any reason for one, of providing random windfalls for receiving counties, like New Hanover in this instance, which have suffered no injury.

The order awarding the forfeitures involved to the Brunswick County Board of Education is therefore affirmed.

Affirmed.

Judges JOHNSON and EAGLES concur.