STATE EX REL. COMMISSIONERS OF PUBLIC LANDS, Appellant, v. ANDERSON, County Treasurer of Kenosha County, Respondent.

*No. 229. Argued November 29, 1972.—Decided January 3, 1973.*
(Also reported in 203 N. W. 2d 84.)

For the appellant the cause was argued by *LeRoy L. Dalton,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

For the respondent there was a brief by *Willard S. Stafford* and *Stafford, Rosenbaum, Rieser & Hansen,* attorneys, and *Robert Horowitz* of counsel, all of Madison, and oral argument by *Willard S. Stafford.*

HALLOWS, C. J.   This appeal raises the question of whether the legislature may define "clear proceeds" as used in art. X, sec. 2, of the Wisconsin Constitution, and whether sec. 59.20 (8), Stats., is a valid declaration of clear proceeds.

The constitution provides the clear proceeds of all fines collected in the counties for breaches of the penal laws shall be set apart as a separate "school fund." [1] The commissioners are constitutional officers and charged with the duty as trustees to administer the school fund. *See* art. X, sec. 7, Wisconsin Constitution; secs. 25.01 and 25.21, Stats. The trial court correctly found the commissioners had standing to raise the issue of the constitutionality of sec. 59.20 (8). They are not an agency of the state created by the legislature within the meaning of the rule of *Fulton Foundation v. Department of Taxation* (1961), 13 Wis. 2d 1, 108 N. W. 2d 312, 109 N. W. 2d 285; *see also: State ex rel. La Crosse v. Rothwell* (1964), 25 Wis. 2d 228, 130 N. W. 2d 806, 131 N. W. 2d 699; *Columbia County v. Wisconsin Retirement Fund* (1962), 17 Wis. 2d 310, 116 N. W. 2d 142.

Prior case law does not require or dictate that sec. 59.20 (8), Stats., be declared constitutional. Since 1849, one year after the adoption of our constitution, a treasurer of a county could retain two percent of the fines as his fee for collecting and transmitting the fines derived from the conviction of the violations of criminal statutes. *See* Revised Stats. 1849, ch. 10, secs. 111, 115, 116. By the Laws of 1929, ch. 287, this amount was increased to 10 percent to be kept by the county; and, by the Laws of 1941, ch. 206, sec. 1a, the legislature increased the amount the county could retain from 10 to 50 percent of the fines and penalties collected under the statute relating to motor vehicle laws.

The question of what amount constitutes "clear proceeds" which the state must constitutionally receive from fines collected by the counties under state penal

---

[1] "School fund created; income applied. SECTION 2. . . . and the clear proceeds of all fines collected in the several counties for any breach of the penal laws . . . shall be set apart as a separate fund to be called 'the school fund' . . . ."

laws is not resolved by resort to any definition in the constitution because the term is not therein defined. Consequently, the legislature must determine the meaning and the application of clear proceeds. From prior cases it is apparent the legislature has such power but it is limited and the legislature may not grant so large a percentage of the fines that the sum left for the school fund is merely nominal, and the sum allowed to be withheld by the collecting county must not be for a purpose other than reimbursement of the expense of prosecuting the offense which generates the fines. Obviously, "clear proceeds" should mean net proceeds and any deduction from the amount of the fines should represent the actual or reasonably accurate estimate of the costs of the prosecution.

The first case considering "clear proceeds" was *Lynch v. The Steamer "Economy"* (1870), 27 Wis. 69, which involved a statute providing a penalty for violating a requirement that spark-catchers be used on river boats and which granted one half of the penalty to the complainant or informer who prosecuted the case. The other half of the penalty was allocated to the county, but the court said this allocation to the county was undoubtedly invalid because the state and not the county was entitled to the remaining one half of the fine. By implication this court in determining clear proceeds allowed an informer or collector's fee, which was traditional at common law, of 50 percent as an expense. But, in the next year, this court struck down a statute which imposed a penalty for permitting sheep infected with "foot rot" to be driven upon a public highway because the statute provided that the entire penalty recovered would go to the complainant. *Dutton v. Fowler* (1871), 27 Wis. 427. Apparently on the theory the amount of the penalty exceeded the cost of prosecution or a controllable item of deduction should not equal

the penalty, this court intimated some part of the penalty had to be reserved for the school fund. Thus, where it was possible to have clear proceeds of a fine, such proceeds must be reserved to the state. In both these cases, the court by implication or assumption recognized the power of the legislature to determine what constituted clear proceeds.

In *State ex rel. Guenther, State Treasurer v. Miles, County Treasurer* (1881), 52 Wis. 488, 9 N. W. 403, the state sought to recover money received as fines which the county treasurer claimed the expense of prosecution had absorbed. The statute required the county treasurer to remit the fines after deducting his "legal fees" which were set at two percent. This court held the county treasurer was bound by the two percent set by the legislature in the statute; it was the duty of the legislature to determine what deductions were to be made, and even this legislative power was limited. This case held all money collected as forfeited recognizances could be retained by county treasurers without violation of any constitutional provision because a forfeiture was not a fine. This holding was affirmed in *State v. Wettstein* (1885), 64 Wis. 234, 25 N. W. 34. Sec. 345.13 (2), Stats., now treats forfeitures of bail as payments of fines.[2]

The power of the legislature to determine "clear proceeds" was reaffirmed in *State v. De Lano* (1891), 80 Wis. 259, 49 N. W. 808. The statute involved therein provided two thirds of the fine would go to the informer and one third to the school fund. The court

---

[2] "345.13 **Posting of bail.** . .

"(2) If the person so arrested and released fails to appear, personally or by an authorized attorney or agent, before the court at the time fixed for the hearing of the case, the money deposited by the accused pursuant to sub. (1) shall be retained and used for the payment of the penalty, which may be imposed, together with costs, after an ex parte hearing upon the accused. . . ."

noted that in the *Lynch Case* the legislative power to determine what amounted to clear proceeds was assumed rather than decided. Addressing itself anew to the question of what "clear proceeds" meant, the court stated that "clear" meant something could be deducted from the fine so that the balance was free from all charges and thus the equivalent of the term "net profit" as used in business transactions. Reasoning from the premise that a power must exist to declare what constitutes clear proceeds, the court said it did exist and rested in the legislature. Although the court thought two thirds of the fee paid to the informer was large, it approved the fee but warned, however, that it would not approve a mere nominal amount being left for the school fund.

In *State ex rel. Johnson v. Maurer* (1915), 159 Wis. 653, 150 N. W. 966, a statute provided for one third of the fine received for fish and game violations to be paid to the informer, one third to the state, and one third to the county treasurer, who was instructed to designate and establish " 'a fund for the protection of fish and game to reimburse the county for the moneys which it shall expend for the enforcement of the fish and game laws . . . .' " The part of the fine given the county treasurer was held unconstitutional on the ground it was not a valid deduction or an expense incurred. The amount paid the county was for future enforcements and not for present enforcement of the laws.

We hold, therefore, the legislature from sheer necessity has the implied power to determine what amount of a fine constitutes "clear proceeds" as used in art. X, sec. 2, Wisconsin Constitution, and in doing so may estimate the reasonable costs of collecting such fines.

We also hold that sec. 59.20 (8), Stats., allowing 50 percent of the fines in motor vehicle cases to be retained by the county, is reasonable and bears a reason-

able relationship to the county's costs of enforcing such laws. The evidence showed Kenosha county lost money in 1970 in collecting such fines. The commissioners argue this evidence is immaterial and the test is the cost of prosecution when the statute was enacted; we find no merit in this argument. The statute is not unconstitutional on its face and the test of constitutionality of its application is keyed to the present, not to the past. A statute, unconstitutional on its face, is void from its beginning to the end; but a statute unconstitutional in an application is only void as applied in a certain time and to the specific circumstances.

Relying on *Scharping v. Johnson* (1966), 32 Wis. 2d 383, 396, 145 N. W. 2d 691, the commissioners argue the statute violates the equal protection clause of the fourteenth amendment to the United States Constitution because no valid distinction exists between motor vehicle code violations and other crimes which would justify the legislature's authorizing counties to retain 50 percent of the motor vehicle fines and only 10 percent of the fines for other crimes. Because of the silence of the constitution, the commissioners also question the power of the legislature to make any classification of crimes for the purpose of determining clear proceeds. We think the legislature has the implied power to make classifications for such purpose and the classification made is reasonable and bears a reasonable and just relationship to the object sought to be obtained, *i.e.*, the allowance to the county of a reasonable cost of collection of the fines.

A legislative classification is presumed to be valid. *State ex rel. Real Estate Examining Board v. Gerhardt* (1968), 39 Wis. 2d 701, 159 N. W. 2d 622. The burden of proof rests on the party challenging the statute, and if there is any reasonable basis for the classification, the court will uphold the statute. *Chicago & N. W. Ry. Co. v. La Follette* (1969), 43 Wis. 2d 631, 169 N. W. 2d

441. Thus the burden of proof is heavy and in addition the invalidity must be established beyond a reasonable doubt. *See Clark Oil & Refining Corp. v. Tomah* (1966), 30 Wis. 2d 547, 141 N. W. 2d 299.

The only evidence in the record shows Kenosha county suffered a net loss in prosecuting state traffic cases. Besides traffic violation cases are high-volume cases involving expensive enforcement and carrying lower fines than other crimes. There is no evidence that 50 percent of the fine is an unreasonable estimate of the costs and it may well be that 10 percent of other fines is insufficient in those cases. Under any view of this record, the commissioners have not met their burden of proof that the statutory distinction is invidious or unreasonable. *See McGowan v. Maryland* (1961), 366 U. S. 420, 81 Sup. Ct. 1101, 6 L. Ed. 2d 393.

*By the Court.*—Judgment affirmed.