JULIUS R. CAUBLE v. CITY OF ASHEVILLE

No. 8328SC253

(Filed 21 February 1984)

1. Penalties § 1; Schools § 1— fines for overtime parking—use for county schools—meaning of "clear proceeds"

   Items bearing a reasonable relationship to the cost of collecting overtime parking fines may be deducted by a municipality in determining the "clear proceeds" of such fines which must be paid by the municipality to the county finance officer for maintaining free public schools.

2. Costs § 4.2— class action—allowance of attorney fee

   A class action brought by plaintiff to compel a city to pay fines collected for overtime parking into the county school fund was properly retained by the trial court for a determination as to whether plaintiff is entitled to attorney fees under the rule permitting a court to award attorney fees to a litigant who at his own expense has maintained a successful suit for the preservation, protection or increase of a common fund.

3. Judgments § 36.2— res judicata—school board not in privy with plaintiff

   In an action brought by a citizen and taxpayer of defendant city to compel the city to pay fines collected for overtime parking into the county school fund, there was no identity of interest required to create a privy relationship between plaintiff and the county board of education so as to make the trial court's finding as to the amount of total collections for overtime parking res judicata and binding upon the county board of education.

APPEAL by defendant from Lewis (Robert D.), Judge. Judgment entered 14 October 1982 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 8 February 1984.

This is the second time this case has been appealed, previous opinions being reported as Cauble v. City of Asheville in 45 N.C. App. 152, 263 S.E. 2d 8 (1980) [hereinafter Cauble I] and 301 N.C. 340, 271 S.E. 2d 258 (1980) [hereinafter Cauble II]. The facts of this matter are set out in those opinions and will only be briefly summarized here.

This is a class action brought by plaintiff in the name of the citizens, residents, and taxpayers of the City of Asheville to compel the city to pay into the Buncombe County School Fund all fines collected pursuant to that city's ordinances forbidding overtime parking. Plaintiff is contending that these monies were being misapplied by the defendant, and that the school fund is entitled

to them pursuant to Article IX, § 7, of the North Carolina Constitution, which provides that:

> All moneys, stocks, bonds, and other property belonging to a county school fund, and the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of this State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

The parties entered into the following stipulation pursuant to an agreement made at a pretrial conference:

> [I]t was agreed that this civil action would be tried in two steps. First, a hearing would be held to determine whether or not Article IX, Section 7 of the Constitution of North Carolina applies to the civil penalties for overtime parking. If the Court should rule in favor of the plaintiff in that respect, a second hearing would be held at which a determination of the "clear proceeds" of the civil penalties could be made.

As a result of the first hearing, the trial court concluded that the fines assessed pursuant to the provisions of Asheville's overtime parking ordinances constituted "a penalty, forfeiture, or fine collected for a breach of the penal laws of the State within the meaning of the provisions of Article IX, Section 7, of the Constitution of the State of North Carolina," and that the county school board was entitled to the clear proceeds of such fines. Judgment was entered accordingly, and defendant appealed.

This Court affirmed the trial court's judgment in *Cauble* I, which decision was in turn affirmed by our Supreme Court in *Cauble* II, although that court reversed the portion of the Court of Appeals' opinion affirming that the clear proceeds be paid directly to the Board of Education of Buncombe County rather than the Buncombe County finance officer for distribution. The holdings of both courts were based largely on an application of G.S. § 14-4, which statute makes a criminal misdemeanor of what would otherwise be only a civil penalty for the violation of ordinances.

The first issue having been answered, i.e., that overtime parking fines belong to the school fund pursuant to Article IX,

Section 7, upon remand the trial court proceeded to resolve the second issue by determining what constituted clear proceeds of overtime parking fines. Each party submitted a definition of "clear proceeds" pursuant to a pretrial order issued upon remand, but the trial court was unable to reconcile these definitions, the defendant's list of what deductions should be allowed from gross proceeds in order to arrive at a net figure being predictably more extensive than plaintiff's. The trial court then entered a subsequent pretrial order which provided that:

> [T]o assist the Court in defining the term "clear proceeds" . . . this matter shall be set for a nonjury hearing, at which time this Court shall consider only the process and procedure whereby a citation and, previously, a notice were issued, processed and collected. . . .

The nonjury hearing referred to in the pretrial order was held and judgment was entered, which judgment provided in pertinent part:

> [t]he term *"clear proceeds" means the amount collected by the City for overtime parking and delinquent overtime parking violations undiminished by direct and indirect costs or expenses of collection* [and that] [t]o hold otherwise would interpose the arbitrary, uncertain and perhaps inconsistent exercise of judicial discretion in determining reasonable costs of collection between the Constitutional mandate concerning fines and the school fund.

(Emphasis added.) Defendant is currently appealing this judgment, the primary ground for its appeal being that the trial court erred in defining the term "clear proceeds."

*Swain & Stevenson, by Joel V. Stevenson and Robert S. Swain, for plaintiff appellee.*

*Patla, Straus, Robinson & Moore, by Victor M. Buchanan, for defendant appellant.*

*Ernest H. Ball, for North Carolina League of Municipalities, Amicus Curiae.*

*Tharrington, Smith & Hargrove, by Richard A. Schwartz, Roger W. Smith, and Ann L. Majestic, for North Carolina School Boards Association, Inc., Amicus Curiae.*

VAUGHN, Chief Judge.

[1]   The central issue on this appeal involves the meaning of the term "clear proceeds." The threshold question in this case, whether funds collected from overtime parking violations constitute penalties or fines within the meaning of Article IX, Section 7 of the North Carolina Constitution, the clear proceeds of which shall belong to the county for maintaining free public schools, has already been decided. In *Cauble* I, as affirmed by *Cauble* II, the Court of Appeals and subsequently the Supreme Court held that such monies collected are indeed fines resulting from "a breach of the penal laws of the State," the clear proceeds of which are to be paid to the Buncombe County finance officer for disbursement to the appropriate administrative units. As to the current appeal, insofar as the judgment of the trial court defined "clear proceeds" as the amounts collected by defendant for overtime parking violations undiminished by direct and indirect costs or expenses of collection, it was in error. What will follow is a discussion of the meaning of clear proceeds and the standard by which such proceeds are to be measured on remand.

The term "clear proceeds" as used in Article IX, Section 7, is synonymous with "net proceeds." The North Carolina cases of *State v. Maultsby*, 139 N.C. 583, 51 S.E. 956 (1905) and *Hightower v. Thompson*, 231 N.C. 491, 57 S.E. 2d 763 (1950), by discussing permissible deductions from gross proceeds, indicate that clear proceeds represent a net result. In fact, the court in *Maultsby* used the term "net proceeds" interchangeably with "clear proceeds." *Id.* at 584, 51 S.E. at 956. *See also Sutton v. Phillips*, 116 N.C. 502, 512, 21 S.E. 968, 970 (1895) (noting in dissenting opinion that "clear" and "net" are synonymous terms); *State ex rel. Commissioners of Public Lands v. Anderson*, 56 Wis. 2d 666, 669, 203 N.W. 2d 84, 85 (1973) (interpreting similar provision in Wisconsin Constitution: "Obviously, 'clear proceeds' should mean net proceeds . . .").

Once it is established that "clear proceeds" means "net proceeds," namely, that some deductions from gross amounts collected shall be allowed, we come to the more difficult aspect of this issue — which deductions shall be allowed. North Carolina case law offers minimal guidance on this matter. In *Hightower v. Thompson, supra,* which involved the forfeiture of a criminal ap-

pearance bond, our Supreme Court, relying on *State v. Maultsby, supra,* noted that " '[C]lear proceeds' have been judicially defined as the amount of the forfeit less the cost of collection. . . ." *Id.* at 493, 57 S.E. 2d at 765. The court applied this definition to the facts to identify the costs of collection as "the citations and process against the bondsman usual in the practice." *Id.* at 493, 57 S.E. 2d at 765.

In *State v. Maultsby, supra,* the court held that a statute providing that one-half of a fine imposed on a criminal defendant convicted of violating state prohibition laws be paid to the informant was unconstitutional, observing "[b]y 'clear proceeds' is meant the total sum less only the Sheriff's fees for collection, when the fine and costs are collected in full." *Id.* at 585, 51 S.E. at 956.

Both *State v. Maultsby, supra,* and *Hightower v. Thompson, supra,* involved particularized applications of the general directive that "costs of collection" will be deducted from gross proceeds to calculate clear proceeds. The plain import of these cases is not that any specific item, such as the sheriff's fee, is to be deducted; rather, that the scope of permissible deductions concerns the cost of collecting the fines. In the case at bar no sheriff's fee is involved, and a rule making such a fee the only permissible deduction is patently illogical.

Although no North Carolina statute or case adequately identifies which deductions from gross proceeds are permissible, in arriving at a definition of the term "clear proceeds" it is helpful to understand which deductions are impermissible by examining cases from North Carolina and other jurisdictions holding that funds had been unconstitutionally diverted from the public schools or similar institutions. The North Carolina General Assembly is clearly without power to appropriate or divert by statute all or any part of fines resulting from violations of city ordinances to cities and towns, this being in direct contravention of the constitutional provision. *School Directors v. Asheville,* 137 N.C. 503, 50 S.E. 279 (1905). A subsequent case forbade the clerk of municipal court to retain a five percent commission pursuant to a local ordinance and statute after collecting fines from the criminal division of the municipal court, *Board of Education v. High Point,* 213 N.C. 636, 197 S.E. 191 (1938), and the Supreme Court in *Shore v. Edmisten,* 290 N.C. 628, 227 S.E. 2d 553 (1976) recognized

that monies to be set aside for future enforcement of the law cannot be deducted from fines to arrive at clear proceeds.

In accordance with North Carolina authority, it is generally true that where a state constitution gives the clear proceeds of fines to public schools, any statute which purports to divert the total proceeds derived from a particular type of fine to any other purpose will be held unconstitutional. *See State ex rel. Rodes v. Warner*, 197 Mo. 650, 94 S.W. 962 (1908) (similarly diverting money belonging to school fund); *State v. Parkins*, 63 W.Va. 385, 61 S.E. 337 (1908) (giving all fines relating to violations of fish and game laws to game warden).

The clear implication in North Carolina case law is that costs of collection of a fine will be deducted to determine clear proceeds, *see State v. Maultsby, supra,* and *Hightower v. Thompson, supra,* and this proposition receives support from other jurisdictions. In a Virginia case, although the monies in question were deemed penalties rather than fines and therefore not within the purview of the constitutional provision, the court reasoned in dicta that deduction of costs is a necessarily implied aspect of the constitutional provision:

> It could not have been intended or expected by the framers of the constitution that the laws imposing fines for offenses could be enforced or collected without cost or expense. They must have . . . intended to appropriate to the literary fund the amount coming to the state after deducting such part as the legislature may have set apart to secure their enforcement and collection. . . . This is not an appropriation or diversion of the fine to an object other than that to which the constitution dedicates it.

*Southern Exp. Co. v. Commonwealth,* 92 Va. 59, 64-5, 22 S.E. 809, 810 (1895). *Accord, State ex rel. Commissioners of Public Lands v. Anderson, supra* (upholding a statute designating a fixed fifty percent of penalties received by the county for state traffic law violations to be retained by the county treasurer to cover costs). *See also State ex rel. Rodes v. Warner, supra* (indicating that a criminal statute giving part proceeds to officers to spur enforcement of law would leave clear proceeds in "full satisfaction of constitutional mandate"); *State v. Parkins, supra* (if portion of fine given to informant, remainder would be net proceeds).

If costs of collection may be validly deducted from amounts collected by the City of Asheville as gross proceeds without violating the constitutional provision, there remains the question of how to arrive at those costs. Case law relating to the determination of costs in similar instances indicates that defining costs of collection is a legislative function. *See, e.g., State ex rel. Rodes v. Warner, supra* (legislature has discretionary power to give part of fine to informant, remainder being clear proceeds); *State ex rel. Guenther v. Miles,* 52 Wis. 488, 9 N.W. 403 (1881) (legislature can appropriate two percent of fines for legal fees); *State ex rel. Commissioners of Public Lands v. Anderson, supra* (legislature has power to define clear proceeds).

The North Carolina General Assembly has not, however, seen fit to provide municipalities with a formula for determining "clear proceeds" of fines realized from traffic violations. Lacking guidance on the subject, this Court is compelled to resort to a less precise measure in order to allow municipalities to retain the costs of collecting the fines in question. *See generally People v. Barber,* 14 Mich. App. 395, 399, 165 N.W. 2d 608, 612 (1968) (to be deemed a cost money must bear "some direct relation" to expense of prosecution); *State ex rel. Commissioners of Public Lands v. Anderson, supra* at 669, 85 ("[A]ny deduction from the amount of the fines should represent the actual or reasonably accurate estimate of the costs of the prosecution").

We therefore hold that the test for determining permissible deductions from gross monies taken in is that the item to be deductible must bear a reasonable relation to the costs of collection of the fine. Although the trial court refused to interpose the "arbitrary, uncertain and perhaps inconsistent exercise of judicial discretion in determining reasonable costs of collection," we believe a determination of costs can be made by qualified accountants, which determination is no more complicated than other problems accountants are daily accustomed to resolving.

We are mindful that in the situation of parking fines, the costs of collection often surpass the amounts collected, the intent of the municipality in passing these ordinances being the regulation of traffic rather than the production of revenue, and that the evidence produced at trial tends to support that proposition. *See People v. Barber, supra* (where act purporting to fund officers'

training council out of a percentage of fines exempted "minor traffic violations"); *State ex rel. Commissioners of Public Lands v. Anderson, supra* (where evidence showed county lost money in collecting traffic fines).

We are equally cognizant of the manifest purpose of the framers of the Constitution in enacting Article IX, § 7, that is, to set aside property and revenue to support the public school system and to prevent the diversion of such property and revenue to other purposes. *Shore v. Edmisten, supra,* at 588, 633, *quoting Boney v. Kinston Graded School,* 229 N.C. 136, 48 S.E. 2d 56 (1948). In balancing the equities here, we wish to note that while it is important that the needs of our school children be met, and met generously, it is also important that a municipality feel free to enact ordinances imposing small fines for overtime parking violations without being economically penalized, if indeed the municipality realizes no revenue from the enforcement of these ordinances.

As to appellant's other assignments of error, the assignments relating to the failure of the trial judge to distinguish between on- and off-street overtime parking violations are without merit. The case was tried generally on a theory of overtime and delinquent overtime parking violations; there was neither allegation nor evidence that any distinction should be made between on- and off-street parking violations.

[2]    There is also no error in that part of the judgment that retained the cause for the purpose of awarding attorneys' fees. It is true that attorneys' fees are not usually an element of court costs. However, a rule exists allowing a court to award attorneys' fees "to a litigant who at his [or her] own expense has maintained a successful suit for the preservation, protection, or increase of a common fund," *Horner v. Chamber of Commerce,* 236 N.C. 96, 97-8, 72 S.E. 2d 21, 22 (1952), despite the lack of statutory authority. *Accord, Rider v. Lenoir County,* 238 N.C. 632, 78 S.E. 2d 745 (1953) (listing necessary elements for application of the rule). It was proper for the trial court to retain the cause for a determination of whether the above rule applies at bar and the plaintiff is entitled to attorneys' fees.

[3]    As to the assignment of error concerning the trial court's conclusion as a matter of law that the amount of total collections

for parking violations between 22 April 1975 and 30 June 1982 would be *res judicata* and binding upon both the parties and upon the Board of Education, this Court first notes that such information is more properly made a finding of fact rather than a conclusion of law, although no prejudice results from mislabeling it a conclusion of law. Indeed, the trial court made the information concerning the amount of collections one of its findings of fact as well as a conclusion of law. As a finding of fact, the amount of collections is *res judicata* and binding upon the parties to this action.

As to the Board of Education, however, the trial court erred in ruling that such a finding, whether denominated fact or law, would be binding upon that organization. A plea of *res judicata* is customarily sustained only where there is an identity of parties, subject matter, and issues, but there are exceptions to this general rule. The doctrine of *res judicata* also applies to privies as well as parties, privies being persons who have mutual or successive rights to the same interest in property. *Masters v. Dunstan*, 256 N.C. 520, 124 S.E. 2d 574 (1962) ("absolute identity of interest is essential"). The identity of interest required to create a privy relationship does not exist between plaintiff and the Board of Education. In addition, a person who is neither party nor privy to an action may be concluded by the judgment if that person assumed and managed the defense of the action with respect to an interest of that person. *Thompson v. Lassiter*, 246 N.C. 34, 97 S.E. 2d 492 (1957). There is no evidence or indication that the Board of Education assumed and managed this action.

That part of the judgment of the trial court that defines clear proceeds, and that part which states that the $491,800.00 figure for total collections for all parking violations between 22 April 1975 and 30 June 1982 shall be *res judicata* upon the Board of Education, are reversed; all other assignments of error are overruled. This cause is remanded for an accounting consistent with this Court's definition of "clear proceeds."

Reversed and remanded.

Judges WEBB and JOHNSON concur.