STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles L. THOMAS, Defendant-Appellant. †

Court of Appeals

*No. 84–838–CR. Oral argument April 18, 1985.—Decided December 4, 1985.*
(Also reported in 381 N.W.2d 567.)

† Petition to review denied.

For the defendant-appellant, a brief was filed by *Steven P. Weiss,* assistant state public defender of Madison. Oral argument by *Steven P. Weiss.*

For the plaintiff-respondent, a brief was filed by *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general. Oral argument by *Sally L. Wellman.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   Charles L. Thomas appeals from his conviction on three counts of kidnapping and three counts of first-degree sexual assault. Thomas challenges the constitutionality of the sexual assault law and the sufficiency of the evidence to sustain the convictions. He also alleges error by the trial court in refusing to submit a lesser-included offense. The state argues that the failure of Thomas to challenge the constitutionality of the sexual assault statute prior to conviction denies him the right to review of this issue on appeal. Because we conclude that a challenge to the constitutionality of a statute on the grounds of vagueness goes to the subject matter jurisdiction of the trial court and therefore cannot be waived, we reach the constitutional issue and uphold the constitutionality of

sec. 940.225(1)(c), Stats. We also conclude the evidence was sufficient to sustain the verdicts on all counts and that the lesser-included offense was properly rejected. Therefore, we affirm.

This appeal arises out of the kidnapping and sexual assault of three women, aged 16 to 19, by four males, including Thomas. The four men were riding in a station wagon operated by Thomas when they picked up the women who were allegedly hitchhiking. Some of the women asserted they were forced into the car. Thomas, and another defendant who was tried at the same time, denied the use of any force.

Once in the car, the women apparently decided to party with the men. Some of the women were offered and accepted beer. They drove to a bar where marijuana was purchased. Subsequent stops were made to obtain alcoholic beverages. During this time, the women made no effort to escape or seek help.

Later, the group stopped at a house where all concerned continued to smoke marijuana and drink alcoholic beverages. One of the women was allowed to make a phone call while one of the men looked on. She got no answer and no other calls were made. A stereo was turned on and two of the women began dancing with some of the men. Up to this point, with the exception of the assertion that the women had been forced into the station wagon, Thomas's story generally coincides with that of the women.

The women testified, however, that they were eventually dragged into bedrooms and raped anally and vaginally. They testified that they tried to escape and that the men locked all the windows and doors to prevent this.

After the sexual assaults testified to by the women, the group left the house and headed for Waukegan, Illinois. The women testified that they were abused during the ride. J.R. stated that she was forced to commit fellatio on one of the defendants, and S.R. testified that she only avoided having to commit fellatio by feigning illness. At the house and during the drive, there is evidence suggesting that the men wanted to turn the women into prostitutes. J.R. was instructed to proposition two men in a car. The women were forced to drink alcoholic beverages.

Once in Illinois, the car stopped briefly at a fast-food store, a house and a bar. The women testified that they made some efforts to attract attention to their plight but that no one would help. They testified that they were afraid and unable to make a simultaneous escape. The women finally escaped by fleeing and getting on a bus which was occupied by a church group.

Evidence was admitted of medical tests performed on the women. Both S.R. and J.R. showed signs of recent forcible intercourse, and both showed a presence of vaginal semen. The evidence as to J.H. showed no similar findings.

## WAIVER

■ Thomas contends on appeal that sec. 940.225(1)(c), Stats., is unconstitutionally vague. The state argues that Thomas failed to raise the issue of the constitutionality of the statute in the trial court prior to conviction and thus has no right to review of this issue on appeal. The state contends that the supreme court has held a constitutional challenge to a statute based on

vagueness is waived if not raised at trial. *Cheatham v. State,* 85 Wis.2d 112, 120–21, 270 N.W.2d 194, 198 (1978); *State v. Weso,* 60 Wis.2d 404, 412–13, 210 N.W.2d 442, 446 (1973).

The state concedes that the court of appeals decisions in *State v. Wilks,* 117 Wis.2d 495, 505, 345 N.W.2d 498, 502–03 (Ct. App.), *aff 'd,* 121 Wis.2d 93, 358 N.W.2d 273 (1984), *cert. denied,* — U.S. —, 85 L. Ed.2d 501 (1985) *(Wilks I),* and *State ex rel. Skinkis v. Treffert,* 90 Wis.2d 528, 538–39, 280 N.W.2d 316, 321 (Ct. App. 1979), hold that a challenge to the constitutionality of a statute on the grounds of vagueness presents an issue of subject matter jurisdiction which the appellate court has a duty to consider, notwithstanding the defendant's failure to raise the issue in the trial court. The state submits, however, that the court of appeals has erred in so holding.

On November 27, 1984, the supreme court released its opinion reviewing the court of appeals decision in *Wilks I. State v. Wilks,* 121 Wis.2d 93, 358 N.W.2d 273 (1984), *cert. denied,* — U.S. —, 85 L. Ed.2d 501 (1985) *(Wilks II).* While the supreme court affirmed the decision of the court of appeals, a portion of the opinion is entirely at odds with the court of appeals opinion but does not expressly reverse it.[1] Relying on *Treffert,* the court of appeals held that when a challenge is made to the constitutionality of a statute on the grounds of vagueness such a challenge presents an issue of subject matter jurisdiction which the court has a duty to consider. The supreme court opinion states that the "[c]onsideration of a constitutional issue raised for the

---

[1] Because this case involved the identical issue on waiver which gave rise to the conflict in *Wilks,* we certified this case to the supreme court. The certification was denied.

first time on appeal is discretionary with this court." *Id.* at 107, 358 N.W.2d at 280. As authority for this statement, the supreme court relied on *In re Baby Girl K.,* 113 Wis.2d 429, 448, 335 N.W.2d 846, 856 (1983), *appeal dismissed sub nom., Buhse v. Krueger,* — U.S. —, 79 L. Ed.2d 670 (1984), and *Sambs v. City of Brookfield,* 66 Wis.2d 296, 314, 224 N.W.2d 582, 592 (1975).

We believe this apparent conflict in holdings is clarified by the careful analysis in *Treffert* wherein the court of appeals discusses the two lines of Wisconsin cases dealing with the waiver issue. One line of cases treats the failure to raise a constitutional challenge to a statute in the trial court as a waiver; the other holds that constitutional attacks can, and sometimes do, affect the trial court's jurisdiction over the subject matter and therefore cannot be waived.

The *Treffert* court concluded that the cases can be reconciled by following the analysis used by the Wisconsin Supreme Court in *State ex rel. Commissioners of Public Lands v. Anderson,* 56 Wis.2d 666, 203 N.W.2d 84 (1973). In upholding the statute in *Public Lands,* the Wisconsin Supreme Court stated: "A statute, unconstitutional on its face, is void from its beginning to the end; but a statute unconstitutional in an application is only void as applied in a certain time and to the specific circumstances." *Id.* at 672, 203 N.W.2d at 87.

The *Treffert* court went on to note that the foregoing language from *Public Lands* was quoted with approval in *In re F.R.W.,* 61 Wis.2d 193, 212 N.W.2d 130 (1973), *cert. denied,* 416 U.S. 974 (1974). *F.R.W.* involved a claim that the juvenile court waiver statute was void on its face for vagueness. The trial court held that the statute was unconstitutional and dismissed a

petition to waive the juvenile into adult court on those grounds. The initial question on appeal was whether or not the order dismissing the petition was appealable. The statute establishing the supreme court's jurisdiction over appeals provided that an order was appealable if it decided a question of jurisdiction. The Wisconsin Supreme Court held:

When the juvenile challenged the constitutionality of sec. 48.18, Stats., as being void for lack of standards, he was, in effect, arguing that the juvenile court had no jurisdiction to act pursuant to that section. The juvenile court judge's determination that sec. 48.18 was unconstitutional was, in effect, a declaration that it had no jurisdiction to act pursuant to that section. . . . Since the juvenile court judge determined sec. 48.18 to be unconstitutional and void, it follows that she properly determined that she was without jurisdiction to act pursuant to the petition for waiver.

*Id.* at 199–200, 212 N.W.2d at 133.

In *State ex rel. Commissioners of Public Lands,* the supreme court was faced with an equal protection challenge to a statute which allegedly set forth arbitrary and unreasonable classifications. In *F.R.W.,* the court was faced with a challenge to the statute contending that it was void on its face for vagueness. These cases involve different types of constitutional attacks that had a direct bearing on whether or not a failure to raise the issue in the trial court resulted in waiver.

Our review of the cases convinces us that the *Treffert* analysis on the law of waiver is correct. The fact that *Baby Girl K.* and *Sambs,* the cases relied upon by the supreme court in *Wilks II,* dealt with equal protection challenges *(Public Lands)* rather than attacks based upon the grounds of vagueness *(F.R.W.)* and the

fact that the supreme court in *Wilks II* did reach the constitutional issue persuades us that the statement in *Wilks II* was not the holding of the case. We therefore conclude that the challenge to the statute on the grounds of vagueness in the case at bar goes to the subject matter jurisdiction of the court and is not deemed waived when it was not raised in the trial court.

## VAGUENESS

Thomas's vagueness challenge is based upon his contention that the "aided or abetted" language of the statute is so unclear that a reasonable person cannot determine whether he is committing first-degree or second-degree sexual assault. In Wisconsin, the perimeters of a constitutional challenge to a statute on the grounds of vagueness were laid down in *State v. Ehlenfeldt,* 94 Wis.2d 347, 355, 288 N.W.2d 786, 789 (1980), wherein the court stated:

The constitutional foundation of the vagueness challenge to a penal statute is the procedural due process requirement of fair notice. *Butala v. State,* 71 Wis.2d 569, 573, 239 N.W.2d 32 (1976). A statute must at least be sufficiently definite to permit one inclined to obey it, even if for no other reason than to avoid its penalties, to reasonably understand what conduct is prohibited and what is allowed. It should also be sufficiently definite to allow a judge or jury to objectively apply its terms to the conduct of a defendant in order to determine his guilt or innocence without having to create or apply standards of their own. *State v. Courtney,* 74 Wis.2d 705, 711, 247 N.W.2d 714 (1976). "If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to

its applicability, it is unconstitutional." *State v. Zwicker,* 41 Wis.2d 497, 507, 164 N.W.2d 512 (1969), appeal dismissed 396 U.S. 26.

Thomas contends that he is entitled to know what degree of sexual assault he is committing when he assaults a person. In *Harris v. State,* 78 Wis.2d 357, 367–68, 254 N.W.2d 291, 297 (1977), the Wisconsin Supreme Court rejected the identical contention:

[A] person does not have a constitutional right to know with certainty which crime, among several, he is committing, at least until the prosecution makes its determination. "A person subject to being charged with two crimes or a crime and a civil penalty is not entitled to know in advance exactly what the consequences of his act shall be by any requirement of due process." [Citations omitted.]

We conclude that due process does not require a statute to be so definite as to inform a defendant in advance exactly what the consequences of his act shall be, other than to make it clear that his act will be criminal. Thomas does not contend the statute is so vague that he was not on notice that the alleged acts were criminal. Thus, the vagueness doctrine does not apply in this situation.

Even if we were to scrutinize sec. 940.225(1)(c), Stats.,[2] in light of the challenge as to vagueness, we

---

[2] Section 940.225(1)(c), Stats., provides:

**(1)** FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:

. . . .

would uphold its constitutionality. The statute simply elevates the crime of second-degree sexual assault to first-degree sexual assault when the attacker "is aided or abetted by one or more other persons and has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence."

The concept of aiding and abetting another in the commission of a crime as set forth in sec. 939.05, Stats., is well-known in the criminal law of this state. The statute has been repeatedly construed by the appellate courts of this state. When the legislature chose the previously construed "aids and abets" language to describe which second-degree sexual assaults will be elevated to first-degree sexual assaults, it chose familiar language which brought with it the whole body of law interpreting sec. 939.05.

This court has consistently followed the rule that "[t]he legislature is presumed to know that in the absence of its changing the law, the construction put upon it by the court will remain unchanged . . ." [citations omitted]; 2A Sutherland, *Statutory Construction,* § 45.12 at 37 (4th ed., Sands, 1973). This is especially true in those situations where the legislature has enacted legislation in an area covered in part by other, previously enacted statutes: "[I]t is assumed that whenever the legislature enacts a provision it had in mind previous statutes relating to the same subject matter, wherefore it is held that in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied

(c)    Is aided or abetted by one or more other persons and has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

103

in those prior statutes, and they should all be construed together." 2A Sutherland, *Statutory Construction,* § 51.02 at 290 (4th ed., Sands, 1973). [Footnote omitted.]

*State v. Hungerford,* 84 Wis.2d 236, 251–52, 267 N.W.2d 258, 266–67 (1978).

Thomas relies on the comments to Wis J I—Criminal 1204 to support his argument that the phrase "aided or abetted" in sec. 940.225(1)(c), Stats., must be more narrowly construed than the phrase "aids and abets" in sec. 939.05, Stats. The committee's comments in footnotes 9 and 10 indicate that the committee feels the statute should be narrowly construed to apply only to the "gang rape situation where one or more other persons actually assist, or are willing to assist the defendant in committing the assault." Wis J I—Criminal 1204 comment 10.

While the jury instruction committee must attempt to develop instructions which, if possible, deal with all varieties of factual situations, we need not do so here. For the committee to express its concern that there may be some types of conduct which constitute aiding and abetting under sec. 939.05, Stats., but fall outside the perimeters of sec. 940.225(1)(c), Stats., is consistent with its role as advisor to the trial courts. The committee is simply alerting the trial courts that there may be a problem in some factual situations and expressing the committee's thoughts as to possible solutions. However, even if there may be some doubt as to the application of the statute to peripheral or less obvious cases, it does not necessarily follow that the statute is unconstitutionally vague.

Where First Amendment rights are not involved—and it is not contended that First Amendment ques-

tions are presented by this case—a defendant who challenges the enactment under which he was convicted on grounds of vagueness is limited to *the conduct actually charged*. Where that conduct is clearly within the prohibited zone, the defendant will not be heard to hypothesize other factual situations which might raise a question as to the applicability of the statute or regulation. [Citations omitted.]

*State v. Courtney,* 74 Wis.2d 705, 713, 247 N.W.2d 714, 719 (1976) (emphasis added).

We conclude that when the legislature used the phrase "aided or abetted" in sec. 940.225(1)(c), Stats., it intended that phrase to have the same meaning as the phrase "aids and abets" in sec. 939.05, Stats., and that Thomas "is limited to the conduct actually charged." While the jury instruction committee may hypothesize as to other factual situations, Thomas is limited to the facts of this case.

An examination of the evidence presented at trial demonstrates that the conduct of Thomas and his co-assailants falls within the intended scope of the statute. The evidence establishes that Thomas had sexual contact with both J.R. and S.R. with the aid and assistance of the other three assailants. S.R. and J.R. were aware that the other men assisted by closing and locking all the doors and windows in the house and closing the curtains prior to the assaults. Nixon, one of the assailants, actually helped Thomas pull J.R. into the bedroom where Thomas first had vaginal intercourse with her. Thomas and Nixon then had simultaneous intercourse with her. S.R. was pushed into a chair, taken into a bedroom by James, threatened and assaulted by James, and sexually assaulted by both Nixon and Stan-

ley before Thomas had intercourse with her. To conclude that the conduct of the other men did not aid and abet Thomas in his sexual assaults is to ignore the obvious. The conduct of the four men, at the very least, intimidated the victims and was a sufficient basis for the jury to conclude that Thomas had been aided or abetted within the meaning of sec. 940.225(1)(c), Stats.[3]

## LESSER-INCLUDED OFFENSE

Thomas next argues that the trial court erred in refusing to give a lesser-included offense instruction on second-degree sexual assault. In *State v. Sarabia,* 118 Wis.2d 655, 662–63, 348 N.W.2d 527, 532 (1984), the Wisconsin Supreme Court states:

We believe that the decision whether to give a lesser included offense instruction is also dependent upon the nature of the crime charged, coupled with the testimony of the defendant. A special situation arises, as in this case, where the defendant presents wholly exculpatory testimony as to the charged offense but requests a lesser included offense instruction which is directly contrary to the defendant's version of the facts. In this case, if the defendant's testimony that he did not fire the fatal shot were to be believed, he was not guilty of any crime in connection with Arreguin's death. Thus, it would appear to be inconsistent for the defendant to argue that he did not commit the act

---

[3] The defendant concedes that there is sufficient evidence to show the traditional aiding and abetting under sec. 939.05, Stats. Because we conclude that that is all that is necessary to be proven, we need not address the sufficiency of the evidence under his theory of interpretation of the statute.

which forms the basis for the crime charged, but then to claim that he is entitled to an instruction on a lesser offense which could only be found had the defendant done the underlying act.

We conclude, however, that in viewing the evidence in the most favorable light it will reasonably admit from the standpoint of the accused, *Ross v. State,* 61 Wis.2d 160, 172, 211 N.W.2d 827 (1973), we must take into account the fact that the jury could reasonably disbelieve the defendant's version of the facts. We recognize that "there may be 'some evidence' of a lesser offense even though this depends on an inference of a state of facts that is ascertained by believing defendant as to part of his testimony and prosecution witnesses on the other points in dispute." *Belton v. United States,* 382 F.2d 150, 155 (D.C. Cir. 1967). We hold that the defendant or the state may request and receive lesser included offense instructions, even when the defendant has given exculpatory testimony, if under a reasonable but different view of the record, the evidence and any testimony other than that part of the defendant's testimony which is exculpatory supports acquittal on the greater charge and conviction on the lesser charge.

We have reviewed the record to see if under a reasonable but different view of the evidence and testimony presented at trial, apart from Thomas's exculpatory testimony, a reasonable jury could acquit on the first-degree sexual assault charge and convict on the lesser charge of second-degree sexual assault. Thomas contends that the answers given by the victims on cross-examination indicate that Thomas was not aided and abetted by the other defendants and justify giving an instruction on second-degree sexual assault.

The victims related only that Thomas was not physically assisted at the precise time he actually committed some of the sexual assaults. The victims' answers do not mean that, as a matter of fact or law, Thomas was not being aided and abetted. We conclude the trial court did not err in refusing to instruct on the lesser-included offense.

## SUFFICIENCY OF THE EVIDENCE

Thomas next argues that the evidence is insufficient to prove beyond a reasonable doubt that he was guilty of kidnapping. This court will sustain the verdict if there was sufficient credible evidence to convince the jury of the defendant's guilt beyond a reasonable doubt. *State v. Toliver,* 104 Wis.2d 289, 296, 311 N.W.2d 591, 595 (1981). We are convinced that there was sufficient evidence to prove the defendant guilty of kidnapping at the point in time when the women were taken from the house in Kenosha to Waukegan, Illinois. Thomas was charged under sec. 940.31(1)(a), Stats., which provides:

**940.31  Kidnapping.  (1)** Whoever does any of the following is guilty of a Class B felony:

(a)  By force or threat of imminent force carries another from one place to another without his consent and with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will . . . .

The record indicates that after they left the house, the victims repeatedly asked to get out of the car and the men said, "No. You're coming with us." They then

108

drove south to Waukegan, Illinois. During the conversation in the car, one of the men informed the women they were going to make them prostitutes, and an argument ensued over which woman belonged to which man. S.R. was forced to perform sexual acts on both Stanley and Nixon during the car trip. J.R. was forced to drink liquor and perform sexual acts on Nixon. At one point during the trip, the men took the women to a house in Waukegan where they informed them they knew there would be someone who would want to buy them. They forced J.R. to proposition a man and to repeat this with some men in a car on the street. James told the women they were going to take them to California and Kentucky.

Before leaving the house in Kenosha to make the trip to Waukegan, J.R. was told by Thomas that she would work for him and make money for him because she was his woman. Viewing the evidence in a light most favorable to the verdict, we are satisfied that there was sufficient credible evidence upon which the jury could have based its decision.

*By the Court.*—Judgment and order affirmed.